LOHMANN GOLF DESIGNS, INC., *et al.*, Plaintiffs, v. LAVERNE KEISLER *et al.*, Defendants (Gewalt Hamilton Associates, Inc., Counter or Cross-Plaintiff-Appellant; Laverne Keisler *et al.*, Cross-Defendants-Appellees; Dean R. Crouse and Associates, Inc., *et al.*, Counter or Cross-Defendants).

First District (2nd Division)   No. 1—92—4434

Opinion filed March 22, 1994.—Supplemental opinion filed February 7, 1995.

Brown & Statza, of Chicago (Daniel H. Brown, of counsel), for appellant.

Barclay & Damisch, Ltd., of Chicago (John W. Damisch and Michael Svanascini, of counsel), for appellees Laverne Keisler and Alice Keisler.

Theodore W. Wroblewski, of Chicago, for appellees Melvin J. Thompson, Francis D. Thompson, and Charles Y. Thompson.

PRESIDING JUSTICE DIVITO delivered the opinion of the court:

After providing engineering services for the development of a proposed golf course on three parcels of property in Barrington, Illinois, counter or cross-plaintiff Gewalt Hamilton Associates, Inc. (Gewalt Hamilton), ceased performance due to nonpayment and recorded a mechanics' lien against each property for $145,568, the full amount owing. Thereafter, Lohmann Golf Designs, Inc., filed a mechanics' lien complaint in the circuit court of Cook County, naming as defendants the owners of the three parcels of property and all other lien claimants, including Gewalt Hamilton. Gewalt Hamilton then filed a counter and cross-claim to foreclose on its mechanics' liens, naming as defendants Laverne Keisler, Alice Keisler, Melvin Thompson, Frances Thompson, and Charles Thompson (collectively defendants), the owners of two of the parcels of property, in addition to several others. Defendants moved to dismiss Gewalt Hamilton's claims against them pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now codified as 735 ILCS 5/2—619 (West 1992))). The circuit court dismissed the claim and awarded defendants attorney fees, finding that by recording three different liens, each for the full amount owing rather than allocating among the three separate parcels of property, Gewalt Hamilton committed constructive fraud.

On appeal, Gewalt Hamilton contends that (1) the circuit court inappropriately considered factual matter not supported by affidavit; (2) the court erred in finding that it committed constructive fraud; and (3) the court improperly assessed costs and attorney fees against it.

In 1988, Martin Jarrett, Inc. (Martin Jarrett), entered into separate contracts for the purchase of several parcels of property in Barrington, including three contiguous farms, two of which belonged to defendants and the third to IMM Acceptance Corporation (IMM).[1] Martin Jarrett, intending to develop a golf course on the three farms, hired

---

[1]The record reveals that no closing was ever held on the property owned by the Keislers, despite numerous extensions. Although the record is silent

Carrowmore Development, Inc. (Carrowmore), to serve as the general contractor of the project and various other subcontractors to provide the necessary services. Lohmann Golf Designs, Inc. (Lohmann), was hired for architectural services and course design; Thompson Dyke and Associates (Thompson Dyke) for land planning; Dean R. Crouse and Associates (Crouse) for surveying services; and Gewalt Hamilton for engineering services.

Gewalt Hamilton rendered professional engineering services from February 1989 through May 1990, when it ceased performance due to nonpayment. At that time, Gewalt Hamilton had provided $189,917 in services, but had received only $44,349 in payments, leaving a balance due of $145,568. Thereafter, between January 3 and 11, 1991, Gewalt Hamilton recorded a mechanics' lien against each of the three properties with the Cook County recorder of deeds, each lien alleging that the full sum was owed to Gewalt Hamilton.

On February 9, 1991, Lohmann and Thompson Dyke, who had also filed liens against the three properties, filed a complaint to foreclose their claims for lien. The complaint named as party defendants all the record property owners as well as all the contractors, including Gewalt Hamilton. After defendants filed a counterclaim, however, Lohmann's and Thompson Dyke's claims against the three property owners were dismissed by stipulation.

On September 26, 1991, Gewalt Hamilton filed its counter and cross-claim to foreclose on its mechanics' liens, stating that the total amount owed was $145,568. It also stated the relative acreage of each parcel: the Keislers' property, at 175.79 acres, constituted 61.56%; the Thompsons' property, at 50.74 acres, constituted 17.77%; and the IMM property, at 59.04 acres, constituted 20.67%. Gewalt Hamilton also recorded a *lis pendens* notice with the recorder of deeds on that date.

On November 15, 1991, the Thompsons filed a section 2—619 motion to dismiss Gewalt Hamilton's claims against them. On December 9, 1991, the Keislers filed a similar motion. Both motions alleged that Gewalt Hamilton's failure to allocate the lien amount between the three parcels of land constituted constructive fraud and that Gewalt Hamilton failed to satisfy the requirements of the Mechanics Lien Act (Ill. Rev. Stat. 1991, ch. 82, par. 1 *et seq* (now codified as 770 ILCS 60/1 *et seq.* (West 1992))) by failing to provide a sworn contractor's statement. The Keisler motion also alleged that Gewalt Hamilton failed to allege any enhancement to the property as a result of its services, a nec-

---

as to whether the other two properties were ever conveyed to Martin Jarrett, we assume that they were not because of the continued involvement in this litigation by the Thompsons and IMM.

essary prerequisite to a mechanics' lien. On June 24, 1992, Gewalt Hamilton filed its response, asserting that the failure to allocate among the three parcels was not fatal to its claim. Instead, it argued that under section 7 of the Mechanics Lien Act (Ill. Rev. Stat. 1991, ch. 82, par. 7 (now codified as 770 ILCS 60/7 (West 1992))), an error resulting in an overcharge will not serve to defeat the lien unless it was made with an "intent to defraud." Gewalt Hamilton also argued that a sworn contractor's statement was not a condition precedent to maintaining a mechanics' lien cause of action.

On September 21, 1992, the circuit court issued an opinion and judgment order. It first found that the failure to provide a sworn contractor's statement was not fatal to the cause of action, but that the failure to allocate was. It stated that based on Gewalt Hamilton's own figures regarding the relative acreage of the properties, the Keislers were overcharged by approximately 38.44%; the Thompsons by 82.23%; and IMM by 79.33%. It concluded that such excessive overcharges constituted constructive fraud as a matter of law, stating that a third party examining the records in the recorder's office would see "a claim far in excess of what should rightfully be claimed," something that would certainly prejudice an owner. The court also noted that despite the lengthy time period since the liens were recorded, Gewalt Hamilton had taken no remedial action to clarify the records. The court then ordered that Gewalt Hamilton's claims against defendants be dismissed with prejudice, with costs and attorney fees to be awarded to defendants. By stipulation, IMM and Gewalt Hamilton agreed that they would be bound by the judgment as if IMM had filed an identical section 2—619 motion to dismiss.

On October 9, 1992, Gewalt Hamilton filed a motion to reconsider, in which it asserted that the court's order was contrary to established law and that the court was mistaken when it found that no remedial action had been taken. Instead, it asserted that by recording the *lis pendens* notice on the same date that it filed its counterclaim, a third party could learn of the appropriate amounts by reviewing the case file in the circuit court. The court rejected Gewalt Hamilton's arguments, stating that rather than serving a remedial purpose, the *lis pendens* notice actually exacerbated the impact of the excessive liens because it merely stated that a lawsuit had been filed and could lead to the reasonable conclusion that the full $145,568 was the subject of that lawsuit. Accordingly, the court denied the motion and awarded the Keislers $6,310 and the Thompsons $1,830 in attorney fees in sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). This appeal followed.

Gewalt Hamilton first contends that the circuit court erred when it considered factual matters not supported by affidavit. It asserts that

the court considered unsupported statements relating to the differing engineering needs among the three parcels as a basis for determining the extent of the overcharge.

In their motion to dismiss, the Keislers stated that the engineering needs of the other two parcels would be substantially different because "the IMM property had considerable wetlands" and the "Thompson parcel was affected by Commonwealth Edison high tension wires" as opposed to "the open fields" of their dairy and grain farm. In its opinion granting the motion and dismissing the claims against defendants, the court stated:

> "As to the absence of Affidavits supporting the claim that each of the three parcels had unique characteristics, \*\*\* IT IS THE OPINION of this Court, that even absent such Affidavits, since such assertions if untrue would subject the movants and their attorneys to sanctions under Illinois Supreme Court Rule 137, they need not be totally disregarded, however IT IS THE FURTHER OPINION of this Court that even if these assertions are disregarded, the more significant unique characteristics of the three parcels are their respective acreages." (Emphasis in original.)

■ Although it is plain from the wording of the statute that a court should not rely on unsupported statements when ruling on a section 2—619 motion (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (now codified as 735 ILCS 5/2—619 (West 1992)) ("[i]f the grounds do not appear on the face of the pleading the attached Motion shall be supported by affidavit"); see also *Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 643, 450 N.E.2d 1360 (holding that factual matter alleged in a section 2—619 motion to dismiss which is not apparent from the face of the pleadings must be supported by affidavit)), Gewalt Hamilton has suffered no prejudice as a result of the court's remark regarding the statements found in the Keislers' motion. The record clearly reveals that the court did not believe it necessary to rely on those statements to find the existence of an overcharge. Instead, the court found that based on the large differences in relative size alone, Gewalt Hamilton had committed constructive fraud. Because the circuit court expressly stated that it would reach the same conclusion even without the improper statements, we find that no reversible error occurred.

Gewalt Hamilton next contends that the circuit court erred when it found that the amounts stated in its recorded mechanics' liens were so grossly overstated that it constituted constructive fraud. It maintains that the circuit court failed to apply section 7 of the Mechanics Lien Act, which states that no lien should be defeated simply because of an error or overcharge unless such error or overcharge was made with the

intent to defraud. It also argues that the court erred when it determined that constructive fraud existed because it failed first to find that a fiduciary duty existed. Finally, Gewalt Hamilton asserts that the filing of its counterclaim and recording a *lis pendens* notice were sufficient to remedy any prejudice resulting from the overcharge. Defendants respond that the circuit court properly found constructive fraud in this case, finding an intent to defraud from the extent of the overcharges. Defendants also contend that no fiduciary relationship is necessary to prove constructive fraud in the filing of a false mechanics' lien claim. Finally, defendants maintain that the *lis pendens* notice hindered their efforts to clear their titles and did not rectify the situation.

Although section 7 of the Mechanics Lien Act states that "an intent to defraud" is necessary before a mechanics' lien claim will be defeated due to an error or overcharge, our courts have held that where a lien claimant knowingly files a lien containing a substantial overcharge, the claim should be defeated on the basis of constructive fraud. (*Fedco Electric Co. v. Stunkel* (1979), 77 Ill. App. 3d 48, 51, 395 N.E.2d 1116; *Marsh v. Mick* (1911), 159 Ill. App. 399, 405-06.) The rationale underlying this rule is that a claimant who mistakenly files an erroneous claim will not be precluded from recovering, while a claimant who knowingly makes a false statement regarding a material matter should not be allowed to recover because the effect of his actions is to give the appearance of a greater encumbrance on the property than that to which he is entitled. *Fedco*, 77 Ill. App. 3d at 51; see also *Christian v. Allee* (1902), 104 Ill. App. 177, 188 (stating that section 7 was intended to protect an honest claimant, who mistakenly files an erroneous lien, rather than a claimant who knowingly files a false statement regarding a material matter).

In *Fedco*, the plaintiff recorded a lien for the amount of $181,824.42 and then subsequently filed a complaint to foreclose the lien, but alleged only $168,003 plus interest as due and owing. The circuit court dismissed the claim, finding that the lien contained overstatements and double billing, and failed to allow for previous payments. The appellate court affirmed the ruling, finding that the evidence indicated that a total overcharge of at least $35,220 was knowingly made and "amounted to constructive fraud as a matter of law." (*Fedco*, 77 Ill. App. 3d at 50-51.) Similarly, in *Marsh*, the court found that a $3,000 lien which included a $1,400 overcharge constituted constructive fraud because such a large error could not be made by "mere mistake." *Marsh*, 159 Ill. App. at 405.

■ In the instant case, Gewalt Hamilton filed three liens for a total of $436,704 it claimed was owed to it from the owners of the three parcels of property. While it is undisputed that Gewalt Hamilton had a le-

gitimate claim of $145,568 for its past efforts, it cannot justify any assertions that it is entitled to triple that amount. Under this approach, a party interested in purchasing all three properties who examined the recorder's files could conclude that the properties as a whole bore nearly half a million dollars in encumbrances. More significant than this aggregate amount, however, is the effect of the overcharge on each individual parcel. As the circuit court found, based on the acreage alone, the Keislers' property was overcharged by approximately 38%, the Thompsons' by 82%, and IMM's by 79%. These figures are similar to the figures in both *Fedco* and *Marsh*. In *Fedco*, the lien claimant sought 26.5% more than that to which he was entitled, while in *Marsh*, the overcharge was approximately 87.5%.

Moreover, as in both *Fedco* and *Marsh*, the circuit court here found that Gewalt Hamilton acted knowingly when it filed the overstated liens. In the sworn affidavit attached to each lien, Robert Hamilton, the president of the company, stated that all statements contained therein were true. As president of the company, it is reasonable to infer that he knew that only $145,568 was due and owing, and yet he signed three separate affidavits that the same amount was owed to the company from three different land owners.

Gewalt Hamilton cites *Georgia-Pacific Corp. v. First Wisconsin Financial Corp.* (N.D. Ill. 1985), 625 F. Supp. 108, 127-28, for the proposition that the mere failure to determine the exact indebtedness between several customers will not, by itself, constitute constructive fraud. In that case, Georgia-Pacific filed lien notices against several customers of Du Page Lumber and Home Improvement Co., each one alleging that Du Page had provided to each $392,335.09 in building materials obtained from Georgia-Pacific, even though the total indebtedness was only $392,335.09. When the customers moved to dismiss the claims as a result of the overcharge, the court found that such inaccuracies raised a question of good faith, but were not in themselves sufficient to show constructive fraud. *Georgia-Pacific*, 625 F. Supp. at 128.

Although we recognize the factual similarity between *Georgia-Pacific* and the instant case, we decline to follow its holding. We believe that the rationale underlying Illinois Supreme Court Rule 137 (134 Ill. 2d R. 137) and its counterpart, Federal Rule of Civil Procedure 11 (Fed. R. Civ. P. 11), places the responsibility on the party filing the lien claim to ensure its accuracy. Because a party who knowingly files liens for amounts well in excess of what he is entitled to receive affects the rights of the persons subject to the liens, we find that such actions can constitute constructive fraud.

Gewalt Hamilton argues in its brief that no finding of constructive fraud can exist without first finding a fiduciary relationship and cites

*In re Estate of Neprozatis* (1978), 62 Ill. App. 3d 563, 378 N.E.2d 1345, to support that proposition. In that case, a contractor was found guilty of constructive fraud where he charged an elderly woman $25,000 for only $4,000 worth of work. The court found that the overcharge was so excessive that it "shock[ed] the conscience." The court expressly stated that it was for that reason that he was properly found guilty of constructive fraud and never mentioned any fiduciary relationship between the contractor and the woman. (*Neprozatis*, 62 Ill. App. 3d at 569.) Because that case is consistent with both *Fedco* and *Marsh*, in that knowledge of an excessive overcharge can constitute constructive fraud, we conclude that the circuit court did not err in finding that Gewalt Hamilton committed constructive fraud when it filed excessively large mechanics' liens despite the absence of a fiduciary relationship.

Furthermore, no attempts were ever made to correct this error. Despite being on notice for the several months between the time of the first motion to dismiss in November 1991 and its own response the following June, Gewalt Hamilton never took any remedial actions other than to file a *lis pendens* notice. As the circuit court correctly held, however, such notice did little if anything to rectify the situation. At best, a person examining the public record who came across Gewalt Hamilton's notice would likely assume that the foreclosure action was for the full amount rather than an unallocated portion. Therefore, because Gewalt Hamilton never allocated its claims despite the ample time and opportunity to do so, we affirm the circuit court and find that the filing of three separate liens for the full amount constituted constructive fraud.

Gewalt Hamilton lastly contends that the circuit court erred when it imposed attorney fees against it as a Rule 137 sanction. The court found that fees were appropriate because Gewalt Hamilton took a "scatter gun approach" rather than a reasoned careful study in asserting their claims.

The law is well settled that an appellate court should give considerable deference when reviewing a circuit court's decision to impose sanctions, and that decision will not be reversed absent an abuse of discretion. (*Yassin v. Certified Grocers of Illinois, Inc.* (1990), 133 Ill. 2d 458, 467, 551 N.E.2d 1319.) When reviewing such a decision, it must be determined whether the circuit court's decision was informed, based on valid reasons, and followed logically from the circumstances of the case. *In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 1010, 559 N.E.2d 571.

In the instant case, the court found that Gewalt Hamilton's excessive liens were constructively fraudulent and prejudiced defendants

by wrongly encumbering their property and clouding their title. Because the court found that Gewalt Hamilton failed to investigate the facts fully, it determined that sanctions were appropriate. As this was an informed decision based on valid reasons, we must affirm the circuit court's decision to impose attorney fees.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and McCORMICK, JJ., concur.

JUSTICE DiVITO delivered the supplemental opinion of the court:

On March 22, 1994, this court filed its opinion in this case, affirming the judgment of the circuit court. (See *Lohmann Golf Designs, Inc. v. Keisler* (1994), 260 Ill. App. 3d 886, 632 N.E.2d 121.) On October 6, 1994, the Illinois Supreme Court granted leave to appeal (157 Ill. 2d 504), and in the exercise of its supervisory authority ordered this court to reconsider its judgment in light of *First Federal Savings & Loan Association v. Connelly* (1983), 97 Ill. 2d 242, 454 N.E.2d 314. We have done so.

At first glance, *Connelly* seems to favor Gewalt Hamilton's position. In that case, a carpet installer filed a blanket lien against four apartment buildings for the $12,102 contract price, without apportionment among the four buildings. The court held that such a blanket lien was acceptable without apportionment, pointing out that the language of the Mechanics' Lien Act specifically authorizes the filing of liens against multiple properties but does not require an apportionment of the total claim among the specific parcels.

Had Gewalt Hamilton filed such a blanket lien, the supreme court's holding in *Connelly* would control this case. Gewalt Hamilton, however, filed three separate liens, each one for the full amount owing against all three properties. We find this situation to be substantively distinguishable from the situation in *Connelly*, therefore requiring a different result.

Following our reconsideration in light of *Connelly*, the judgment of the circuit court is still affirmed.

Affirmed.

HARTMAN and McCORMICK, JJ., concur.