THIRD DIVISION

NOVEMBER 10, 2004   

1-03-3296

PETER J. HARTMANN COMPANY, an Illinois )

Corporation, )

) Appeal from the 

Plaintiff-Appellant/Cross-Appellee, ) Circuit Court of

) Cook County.

v. ) 

)

CAPITOL BANK & TRUST COMPANY, as Trustee )

under Trust Agreement No. 1975; CAPITOL BANK & )

TRUST COMPANY; NORTH BANK; OKLAHOMA )

OIL COMPANY; ALDO BOTTALLA; DANIEL )

PONTARELLI; R. NEIL BEAULIEU; ANTHONY )

MINSCALCO; PARKVIEW PLAZA ASSOCIATES, )

INC.; CAROLYN MOSLEY BRAUN, Registrar of )

Titles; and UNKNOWN OTHERS, ) 

) 

Defendants-Appellees, ) 

)

and ) Honorable

) Cyril J. Watson,

 EMIL ROSS, INC., ) Judge Presiding.

)                

Defendant-Appellee/Cross-Appellant.           )     

JUSTICE HARTMAN delivered the modified opinion of the court upon denial of rehearing:

Plaintiff, Peter J. Hartmann Company (Hartmann), sought compensation for its removal and disposal of contaminated soil from property located at 2800 West Irving Park Road (the property) from defendants, Capitol Bank & Trust Company, as Trustee under Trust Agreement No. 1975, Capitol Bank & Trust Company, North Bank, Oklahoma Oil Company, Aldo Bottalla, Stephen D. Korshak, James S. Bottalla, Daniel Pontarelli,  R. Neil Beaulieu, Anthony Minscalco, Parkview Plaza Associates, Inc. (Parkview),  Emil Ross, Inc. (Ross), Carolyn Mosely Braun, Registrar of Titles, and unknown others, under several theories, including foreclosure of mechanics lien and breach of contract.    Hartmann appeals the circuit court's finding that the recording and registering of multiple notices and claims for lien constituted constructive fraud and rendered Hartmann's mechanics lien unenforceable.  In its cross-appeal, Ross appeals from the jury verdict in favor of Hartmann on its breach of contract claim.

Hartmann was engaged in the business of providing, installing, testing, repairing, removing, and disposing of underground storage tanks (tanks) and cleaning up environmental contaminants.    On November 24, 1989, Hartmann entered into a written contract with Ross to perform work at the property.  The contract provided that Hartmann would perform certain work enumerated in seven numbered paragraphs in exchange for a fixed price of $9,700.  Following a line showing the $9,700 fixed price, the contract contained a soil removal clause.  Hartmann removed the tanks and the contaminated soil.  Hartmann was paid $2,500.  

Hartmann recorded and served a notice and claim for lien under number 90451577 dated August 29, 1990, and signed by William P. Hartmann, president of Hartmann (August 29 notice).  The August 29 notice identified Hartmann as the lien claimant, “EMIL ROSS INC. - DAN PONTARELLI” as the contractor and Capital Bank, Trust #1975 and Parkway Plaza Associates as the owners.  It described the property’s address as 2800 West Irving Park, Chicago, Illinois.  The August 29 notice stated that on December 7, 1989, the contractor made a subcontract with Hartmann to provide tank removal and EPA required clean-up on the site.  It further stated that by August 20, 1990, Hartmann had “completed thereunder all that was  required to be done by said contract.”  The August 29 notice claimed $250,000 as due and owing for the work performed.  

Hartmann recorded and served a notice and claim for lien under number 90521730 dated October 18, 1990, and signed by John C. Corkhill, vice president of Hartmann (October 18 notice). The October 18 notice identified Hartmann as the claimant and Ross  as the contractor.  It identified the following as owners of the property: Capitol Bank, Trust #1975;  Parkview Plaza Associates Inc.; Daniel Pontarelli; Anthony Miniscalco; Capitol Bank; North Bank; Stephen D. Korshak; Neil Beaulieu; and Oklahoma Oil Company.  The October 18 notice gave the same property address as the August 29 notice and, like the August 29 notice, it described a December 7, 1989 subcontract for Hartmann to provide tank removal and EPA required clean-up on the site.  The October 18 notice further stated that “on August 20, 1990 the claimant substantially completed thereunder all that was required to be done by said contract.”  It then claimed an amount due and owing to claimant of $279,824.35.  

Hartmann also registered  two notice and claim for lien documents with the Cook County Registrar of Titles, both dated October 18, 1990.  Registered notice number 3922337 was signed by Corkhill.  Registered notice number 3927531 was signed by William Hartmann, as agent of Hartmann.  Both documents were identical to the October 18 notice except they both stated they were “AMENDING FILED DOCUMENT, DOCUMENT NUMBER 90451577," the August 29 notice.            

On October 17, 1990, Hartmann filed a two count complaint to foreclose mechanics lien (count I) and for breach of contract against Ross (count II).  Hartmann alleged
 that it had entered into the contract on or about November 24, 1989; by August 20, 1990, it had removed and disposed of all the tanks and the contaminated soil; and it demanded payment of $279,824.35 as a result of this work, but had not been paid.  Hartmann filed a 
lis
 
pendens
 notice of its lawsuit on October 25, 1990.   On December 5, 1990, Korshak, Beaulieu, Pontarelli, Minscalco, Parkview, and Ross filed a counterclaim alleging that Hartmann had committed fraud in advising defendants with respect to the amount of contaminated soil that would need to be removed and the cost thereof.  The counterclaim was the subject of a previous appeal to this court (
Peter J. Hartmann Co. v. Capitol Bank and Trust Co.
, 296 Ill. App. 3d 593, 694 N.E.2d 1108 (1998) (
Hartmann I
)).
(footnote: 1)      

On May 7, 1999, defendants filed a "motion for declaratory judgment," arguing that the soil removal clause of the contract did not create any contractual obligation for them to pay for the removal of contaminated soil.  On June 22, 1999, the circuit court declared as a matter of law that the written contract "did not contain any obligation by the parties regarding the removal of contaminated soil and payment therefore on a cost plus basis or otherwise."   The court found that the contract was limited to Hartmann's promise to perform the items enumerated in paragraphs one through seven of the contract in exchange for $9,700.

On July 23, 1999, Hartmann filed a seven count verified fourth amended complaint.   In count I (mechanics lien foreclosure as a subcontractor), Hartmann alleged that the written contract included the removal of contaminated soil.  Hartmann also alleged that during the removal of the tanks, Ross requested that Hartmann remove the contaminated soil as an addition to the contract and that it agreed to do so at the rate of cost plus 20%.  In count II (mechanics lien foreclosure as an original contractor), Hartmann alleged the written contract, but also that on March 23, 1990, the owners requested that Hartmann remove the contaminated soil and that it agreed to do so at a rate of cost plus 20%.  Counts I and II were directed against all defendants.  Count III alleged breach of contract against Ross based on the same facts alleged in count I.  Count IV alleged breach of contract against Korshak, Pontarelli, Beaulieu, Miniscalco and Parkview based on the same facts alleged in count II.  Count V alleged joint and several liability against all defendants  under the Mechanics Lien Act (the Act) (770 ILCS 60/0.01 
et
 
seq
. (West 2000)).  Count VI alleged unjust enrichment  and count VII alleged breach of contract third party beneficiary against Capitol Bank & Trust, as Trustee under Trust Agreement No. 1975, Korshak, Pontarelli, Beaulieu, Miniscalco and Parkview.     Defendants moved to dismiss portions of the fourth amended complaint under sections 2-615 and 2-619 of the Code of Civil Procedure  (735 ILCS 5/2-615; 5/2-619 (West 2000)).  On October 28, 1999, the circuit court denied the motion as to counts I, III, and V, but limited Hartmann's recovery to $9,700; denied it as to counts II, IV, and VI; and granted it with prejudice as to count VII.  On May 10, 2000, the court dismissed counts II, IV, and VI as time-barred, holding that the oral contract and unjust enrichment claims did not relate back to Hartmann’s initial written contract claim.  Following trial on counts I, III, and V, with Hartmann's claims limited to $9,700, the circuit court filed a memorandum opinion and entered judgment on March 23, 2001, in favor of defendants on counts I and V, and in favor of Hartmann on count III in the amount of $7,200 ($9,700 offset by $2,500 previously paid by Ross).  The court also found that because Hartmann’s notice and claim for lien was in the amount of $279,824.35 and the contract work was only in the amount of $9,700, the notice and claim for lien was fraudulent as a matter of law and Hartmann was entitled to no mechanics lien.    

Hartmann appealed asking that the circuit court's June 22, 1999 order be reversed or, alternatively, that the orders dated October 28, 1999, and/or May 10, 1999, be reversed and the cause remanded for further proceedings.  On appeal, this court found that the soil removal clause was part of the written contract and that the circuit court erred in dismissing counts II, IV, and VI of the fourth amended complaint as time barred.  The circuit court's judgment was reversed and the cause was remanded for further proceedings.  
Peter J. Hartmann Co. v. Capitol Bank & Trust Co.
, No. 1-01-1547 (2002) (unpublished order under Supreme Court Rule 23) (
Hartmann II
).  Plaintiff did not raise the issue of constructive fraud in that appeal.  This court noted the constructive fraud finding in a footnote in the order which stated: “The court also found that Hartmann had recorded two liens which significantly overstated its valid lien claims, amounting to constructive fraud.  Consequently, the claims for lien by Hartmann recorded with the Cook County Recorder of Deeds were 'declared void, held for naught, and expunged from the title' of the property.” 

Upon remand, the case was bi-furcated with plaintiff's contract claim against Ross (Count III) and Parkview’s counterclaims being transferred to the law division for a jury trial and the mechanics lien claims remaining in the chancery division.  During the jury trial, the jury was instructed:

“If you decide for [Hartmann] on its claim for breach of contract, you must fix the amount of money which will reasonably compensate [Hartmann] for all loss naturally arising from the breach.  In calculating [Hartmann’s] damages, you should determine that sum of money that will put [Hartmann] in as good a position as it would have been in if both [Hartmann] and Emil Ross, Inc. had performed all of their promises under the contract. [Hartmann] claims damages in the amount of $279,824.35.  Whether these damages have been proved by the evidence is for you to determine.”

During deliberations, the jury submitted the following written question to the circuit judge: “can we consider time value of money in determining damages?”  The circuit judge responded “you have received all of the evidence and instructions, please continue to deliberate.”

The jury returned a verdict in favor of Hartmann and against Ross in the amount of $404,902.83 on Hartmann's breach of contract claim and in favor of Hartmann and against Parkview on Parkview’s counterclaim for fraud.  On May 6, 2003, judgment was entered on the jury's verdict in favor of Hartmann and against Ross, in the amount of $404,902.83 and against Parkview on its fraud counterclaim.  

Ross filed a post-trial motion which sought vacatur of the verdict and judgment and a new trial or, in the alternative, remittitur.   In its response to the post-trial motion, Hartmann requested that if the circuit court determined that remittitur was warranted that it enter a remittitur to $279,824.35 plus prejudgment interest at the statutory rate.  In its July 17, 2003 order the court found that “the jury verdict herein was based on a finding that the principal amount due on the contract was $279, 824.35 and the application of an interest rate of 3.5% per annum to said amount.”  The court further ordered that the judgment previously entered on the jury’s verdict shall stand and Hartmann’s request for a remittitur to $279,824.35 plus 5% statutory prejudgment interest is denied.   

On July 22, 2003, Hartmann moved for judgment and foreclosure of its mechanics lien.  During the September 30, 2003 hearing on the motion, the circuit court found that (1) there was a valid contract, (2) Parkview authorized Ross to contract with Hartmann, and (3) the work was lienable.  The court further found that  the recording and registering of multiple notices and claims for lien constituted constructive fraud, rendering  Hartmann's mechanics lien unenforceable.  In an order dated October 1, 2003, the court dismissed with prejudice counts II and IV of the fourth amended complaint, denied Hartmann's motion for judgment of foreclosure and sale because the mechanics lien is unenforceable, and entered judgment in favor of defendants on counts I and V of the fourth amended complaint.

On October 29, 2003, Hartmann filed a timely notice of appeal, appealing the October 1, 2003, order "entering judgment in favor of Defendants and against Plaintiff on Counts I and V of Plaintiff's Fourth Amended Complaint."  On November 7, 2003, defendants timely filed a notice of cross-appeal, appealing the May 6, 2003 and July 17, 2003 orders "which respectively entered judgment on a jury verdict and denied the Defendant's Post-Trial Motion."       

I

Hartmann argues on appeal that the circuit court erred in finding that its recording and registering of multiple notice and claim for lien documents constituted constructive fraud, rendering the mechanics lien unenforceable.  According to Hartmann, this case involved one lien for which it spread multiple notices on the record.  When the notices are considered as a whole along with the foreclosure suit and the 
lis
 
pendens
 notice, they clearly indicate a single lien claim for $279, 824.35.

Defendants respond that the August 29 and October 18 notices stand on their own as neither purported to amend the other and that the differences between the two notices demonstrate that they are in fact two distinct liens.  According to defendants the separate liens must be aggregated  resulting in an overstatement of Hartmann's maximum valid lien claim of 89%. 

Section 7 of the Act (770 ILCS 60/7 (West 2000)) (section 7), provides, in pertinent part: “[n]o such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud.”  770 ILCS 60/7 (West 2000).  Section 7 is intended to protect an honest lien claimant who makes a mistake rather than a dishonest claimant who knowingly makes a false statement.  
Bank of America National Trust and Savings Ass’n v. Zedd Investments, Inc.
, 276 Ill. App. 3d 998, 658 N.E.2d 849 (1995) (
Zedd
).  
Where a lien claimant knowingly files a lien containing a substantial overcharge the claim should be defeated on the basis of constructive fraud.  
Lohmann Golf Designs, Inc. v. Keisler
, 260 Ill. App. 3d 886, 632 N.E.2d 121 (1994) (
Lohmann
); 
Zedd
.  See also 
Fedco Electric Co., Inc. v. Stunkel
, 77 Ill. App. 3d 48, 395 N.E.2d 1116 (1979) (
Fedco
); 
Marsh v. Mick
, 159 Ill. App. 399 (1911) (
Marsh
).
(footnote: 2)  A claimant who knowingly makes a false statement regarding a material matter should not be allowed to recover "because the effect of his actions is to give the appearance of a greater encumbrance on the property than that to which he is entitled."  
Lohmann
, 260 Ill. App. 3d at 891.  
 

In 
Lohmann
, after providing engineering services for the development of a proposed golf course on three parcels of property owned by separate owners, a subcontractor recorded a separate mechanics lien against each property each for $145,568, the full amount due for work performed on all three properties.  The subcontractor filed a counter and cross claim to foreclose its mechanics liens stating the total amount owed was $145,568.  The court found a party interested in purchasing all three properties who examined the Recorder's files could conclude that the properties as a whole bore almost $500,000 in encumbrances.  The subcontractor acted knowingly when it filed the overstated liens where the same person signed the three separate affidavits attached to the liens.  "As president of the company, it is reasonable to infer that he knew that only $145,568 was due and owing, and yet he signed three separate affidavits that the same amount was owed to the company from three different land owners."  
Lohmann
, 260 Ill. App. 3d at 892.  The court rejected the subcontractor's argument that in filing its 
lis
 
pendens
 notice, it corrected the filing error.  A person examining the public record who saw the 
lis
 
pendens
 notice would likely assume that the foreclosure action was for the full amount rather than an unallocated portion.  The court concluded that the filing of three separate liens for the full amount constituted constructive fraud.

In 
Zedd
, a subcontractor entered into two contracts with a developer  to perform electrical work in a residential subdivision.  One of the contracts covered work to be done on townhomes and the other covered work to be done on single family homes.  In April 1991, the subcontractor filed 60 individual mechanics liens against residences in the subdivision (April liens).  Each lien specified the value of work performed for a specific lot with the total amount exceeding $122,000.  Each lien listed June 26, 1990, as the date of the contract and listed dates of completion for the work ranging from December 20, 1990 to April 18, 1991.  In July 1991, the subcontractor filed a blanket lien against all of the property in the subdivision, claiming that it was owed $138,633.07 exclusive of interest (July lien).  The July lien was based on the May 1989 contract and listed April 13, 1991, as the completion date.  In August 1991, the subcontractor filed two more blanket liens covering only the parcels that were still owned by the developer (August liens).  One lien stated that $26,069.04 was owed for work performed pursuant to the contract for single family homes and  the other stated that $121,766.37 was owed for work performed pursuant to the townhome contract.  Both liens listed April 13, 1991, as the completion date of the work.  All the land covered by the August liens also was covered by the April or July liens.  The subcontractor brought an action seeking judgment and foreclosure on all the liens, the total of which exceeded $400,000.  The circuit court granted summary judgment against the subcontractor, finding that it had committed constructive fraud by filing multiple liens which misrepresented the amount it was owed.

The appellate court stated that "[t]he 
Lohmann
 decision puts contractors on notice that they must exercise their rights under the Mechanics Lien Act in a manner that does not diminish the integrity and accuracy of land records."  
Zedd
, 276 Ill. App. 3d at 1001.  The subcontractor failed to do so where for each parcel in the subdivision it filed at least two separate liens based on different contracts and different work completion dates.  The court found that interested persons inspecting the land records for a particular parcel mistakenly would conclude that the parcel was encumbered twice and for an amount substantially greater than the subcontractor actually was owed.  The court held that "lien claims should be defeated on the basis of constructive fraud where a lien claimant files multiple liens that create the appearance of an encumbrance on the property which is substantially greater than the amount the claimant is owed."  
Zedd
, 276 Ill. App. 3d at 1001-1002.

Lohmann
, 
Zedd
, 
Fedco
, and 
Marsh
 are distinguishable.  Even under a constructive fraud theory, section 7 requires intent to defraud.  In the cited cases, the intent to defraud was shown by executed documents which on their face overstated the amount due in combination with some other evidence of record from which intent could be inferred.  In both 
Fedco
 and 
Marsh
, the claimants filed a single lien for one amount and then filed suit to foreclose the lien alleging a significantly lesser amount as due and owing.  In 
Fedco
, there was an admission of an intent to overstate the lien amount.  In 
Lohmann
, each of the filed liens contained a false statement on its face regarding the amount owed in that the lien claim for each parcel was for the full amount owed for all three parcels.  In 
Zedd
, the lienor filed at least two separate liens for each parcel based on different contracts and different work completion dates and then brought an action for judgment and foreclosure of 
all
 the liens.    

In the case 
sub
 
judice
, there is no document which on its face overstates the amount due and no evidence of intent to defraud.  The notices and claims for lien Hartmann recorded and registered state a single contract date for the same described work on the exact same property with the same completion date.  With the exception of the August 29 notice, the notices are identical.  Further Hartmann provided express notice on the record that the August 29 notice subsequently was amended.  Throughout the fourteen years of this case, Hartmann has asked for one amount, $279,824.35.  Each notice, with the exception of the August 29 notice which was expressly amended, stated the amount due was $279,824.35.  At no time has Hartmann attempted to cumulate the figures on the separate notices.  The foreclosure suit and 
lis
 
pendens
 notice indicate Hartmann sought foreclosure of a single lien in the amount of $279,824.35.  The subsequent filings are amendatory in nature, merely adding necessary parties and clarifying the amount owed.  Amendment of a notice does not indicate fraud. The total lack of any intent by Hartmann to defraud is further demonstrated by the jury’s complete rejection of Parkview’s  fraud counterclaim.  There is simply no evidence that Hartmann intentionally overburdened the land records or that any person was misled by the documents Hartmann recorded and registered.
(footnote: 3)    

Citing 
Ronning Engineering Co., Inc. v. Adams Pride Alfalfa Corp.
, 181 Ill. App. 3d 753, 537 N.E.2d 1032 (1989) (
Ronning
); 
Candice Co., Inc. v. Ricketts
, 281 Ill. App. 3d 359, 666 N.E.2d 722 (1996) (
Candice
); and 
Bale v. Barnhart
, 343 Ill. App. 3d 708, 798 N.E.2d 750 (2003) (
Bale
), defendants argue that Hartmann's liens are unenforceable because they fail to provide "a brief statement of the contract" as required by section 7  where each of the recorded and registered notices describe a December 7, 1989 subcontract and the complaint for foreclosure refers to a November 24, 1989 written contract.  These cases stand for the proposition that improper identification of a party to a contract fails to provide the requisite "brief statement of the contract."  In the present case the complaint and the lien notices identified the same parties to the contract and the same work.  The notices described a contract between the contractor, Ross,  and Hartmann to provide tank removal and EPA required clean-up on the site.   The fourth amended complaint describes a written contract between Ross and Hartmann dated "[o]n or about November 24, 1989" for the removal and disposal of four underground hydrocarbon fuel storage tanks, taking and analysis of soil samples, and  removal and disposal of contaminated soil.  The date discrepancy is only 13 days, rather than 10 months as in 
Ronning
.  Moreover, the complaint in the case at bar plead a contract "on or about November 24, 1989."  The case 
sub
 
judice
 does not fall within the parameters of 
Ronning
, 
Candice
, and 
Bale.
 

The circuit court erred in finding that Hartmann's recording and registering of multiple notice and claim for lien documents constituted constructive fraud, rendering the mechanics lien unenforceable. 

II

On cross-appeal, Ross contends that it is entitled to a new trial on Count III of Hartmann’s fourth amended complaint because the jury’s verdict of $404,902.83 was contrary to Hartmann’s proofs and pleadings and the circuit court’s instructions.  Ross argues that because it cannot be ascertained with definiteness what the jury intended by its verdict, a new trial must be granted.  According to Ross, there is no way to determine how much of the jury’s verdict was attributable to contract damages and how much was attributable to something else.

In 
McElroy v. Patton
, 130 Ill. App. 2d 872, 265 N.E.2d 397 (1970) (
McElroy
), the jury returned a verdict of $6,000 for breach of an oral contract to perform home repair work in a workmanlike manner.  The 
ad
 
damnum
 was $5,000 and a maximum of $4,800 in damages was proved.  The circuit court granted defendant’s request for a new trial.  The appellate court reversed finding that the verdict was excessive, but that a new trial was not warranted.  The court noted that “unless the amount of the verdict is of such magnitude as to reflect, and result from, passion and prejudice, the amount of the verdict is primarily within the discretion of the jury.”  Where the verdict exceeds the proven damages, however, it must be corrected.  The court found that “the proper disposition here is to reverse the action of the trial court in allowing the motion for new trial, and to remand this cause to afford the appellants an opportunity to accept a remittitur of $1,200 from the $6,000 verdict to conform to the proof.”  
McElroy
, 130 Ill. App. 3d at 877-78.     

Hartmann argues that there is no evidence that the jury in the case 
sub
 
judice
 acted out of passion or prejudice and its verdict is not against the manifest weight of the evidence.  Ross points out that the jury's verdict exceeds the maximum contract damages sought by plaintiff by $125,078.48.  According to Ross such a deviation from an easily ascertainable number could only be the result of the jury's sympathy, passion and prejudice.  

When considered with the jury's note, the verdict appears reasonably to compensate Hartmann for its contract damages plus an additional amount for the time value of money.  As in 
McElroy
 the verdict is excessive and must be corrected, but a new trial is not warranted.  This case has been pending for 14 years and already has been before this court twice.  Rather than prolong this litigation any further, remittitur will be utilized to correct the excessive verdict.  "The ordering of remittitur in lieu of wholly setting aside an excessive jury verdict, affirmance of which would be erroneous, has consistently been acknowledged to be promotive of the ends of justice and the termination of litigation."  
Haid v. Tingle
, 219 Ill. App. 3d 406, 412, 579 N.E.2d 913 (1991) (
Haid
). 
"The practice of ordering a remittitur of excessive damages has long been recognized and accepted as part of Illinois law."  
Best v. Taylor Machine Works
, 179 Ill. 2d 367, 412, 689 N.E.2d 1057 (1997).  Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) (Rule 366(a)(5)), specifically provides that a reviewing court has the power to grant any relief, including the entry of a remittitur.  "A remittitur is an agreement by the plaintiff to relinquish, or remit, to the defendant that portion of the jury's verdict which constitutes excessive damages [citations] and to accept the sum which has been judicially determined to be properly recoverable damages [citation].  The only alternative to a remittitur in a case where the verdict exceeds the damages properly proven [citations], and/or where the verdict can be accounted on the sole basis that the jury acted from some improper motive [citation] such as passion or prejudice [citation] is for the trial judge to order a new trial [citations]."  
Haid
, 219 Ill. App. 3d at  411.  A court does not have the authority to reduce the damages by entry of a remittitur if plaintiff objects or does not consent.  
Haid
, 219 Ill. App. 3d at 411.  "The trial court must afford the plaintiff the choice of agreeing or refusing to the entry of a remittitur, with the proviso that the plaintiff's refusal to agree to the entry of a remittitur will result in the ordering of a new trial."  
Haid
, 219 Ill. App. 3d at 411-12.  

In the case 
sub
 
judice
, the circuit court made a finding that the principal amount due on the contract was $279,824.35.  The parties do not contest that this was the amount of damages requested.   Throughout the trial, Hartmann indicated that the contract amount was $279,824.35.    The jury was instructed that “[Hartmann] claims damages in the amount of $279,824.35.”  Pursuant to Rule 366(a)(5), a remittitur is entered here reducing the amount due and owing to $279,824.35, conditioned upon Hartmann's consent.  Absent that consent, a new trial on the issue of damages would be proper.  See 
Luye v. Schopper
, __ Ill. App. 3d __, 809 N.E.2d 156 (2004). 

For the reasons set forth above, in Hartmann’s principal appeal, the judgment of the circuit court of Cook County in favor of defendants on counts I and V of the fourth amended complaint is reversed and the cause remanded with instructions to (1) enter a judgment of foreclosure and sale in favor of Hartmann on its mechanics lien claim and (2) determine the amount of interest due under the Act. All previous mechanics liens recorded or registered against the property by Hartmann are to be released.  In Ross’ cross-appeal, pursuant to the authority of Rule 366(a)(5), the  judgment entered in favor of Hartmann is affirmed in the reduced amount of $279,824.35 on the condition that within 30 days from the date of the filing of this opinion, Hartmann files a consent to the remittitur with the clerk of this court. Upon the filing of such consent, the judgment is affirmed. In the event such consent is not filed within 30 days, the judgment is reversed, and the case is remanded for a new trial on the issue of damages.

Affirmed in part, reversed in part and remanded with instructions.
 GREIMAN and QUINN, J.J., concur. 

FOOTNOTES
1:
In 
Hartmann I
, this court affirmed the dismissal of Korshak, Beaulieu, Pontarelli, Miniscalco, and Ross from the counterclaim.  Only Parkview remained as a counter-plaintiff.  

2:
In 
Fedco
, plaintiff recorded a lien for $181,824.42 and subsequently filed a complaint to foreclose the lien alleging only $168,003 plus interest as due and owing.  Plaintiff admitted to overstatements, double billing and failure to allow for previous payments.  The appellate court affirmed the dismissal of the claim, finding that the evidence indicated that a total overcharge of $35,220 knowingly was made and "amounted to constructive fraud as a matter of law."  
Fedco
, 77 Ill. App. 3d at 50-51.  In 
Marsh
, the court found that a $3,000 lien which included a $1,400 overcharge constituted constructive fraud because such a large error could not be made by "mere mistake."  
Marsh
, 159 Ill. App. at 405. 

3:
Both parties cite the deposition testimony of defendants’ witness, Jodi Henninger, a Chicago Title and Trust employee.  This deposition is not part of the record on appeal, but is attached as an exhibit to defendants' motion to strike a portion of plaintiff's brief which was filed in this court and denied on May 10, 2004.  Hartmann cites the following testimony: if she were to look at the underlying proceedings and saw it was a suit to foreclose on a mechanics lien and the suit was seeking damages in the amount of $279, 824.35, in her opinion "[t]he amount they're claiming in the suit is the amount of the filed mechanics lien claim."  She further stated that at Chicago Title, the standard amount of a title indemnity for a mechanics lien would be two times the amount of the lien.  She later stated "[i]f I was making an underwriting decision to insure over a mechanics lien, based on the evidence in front of me and my review of the proceeding, if it's the same way as you have told me, that the complaint states the amount Peter J. Hartmann is claiming is $279,000, which I have no knowledge of, I would say if that's correct, then my opinion is if we were going to be insuring over these recorded mechanics liens, most likely we would take two times the $279,000."  Defendants cite her testimony that the title commitment generated by Chicago Title demonstrates on its face four mechanics liens of record.