# Illinois Official Reports

## Appellate Court

---

*MEP Construction, LLC v. Truco MP, LLC*, 2019 IL App (1st) 180539

---

| | |
|---|---|
| Appellate Court Caption | MEP CONSTRUCTION, LLC, Plaintiff-Appellant, v. TRUCO MP, LLC; RANDHURST IMPROVEMENTS, LLC; WELLS FARGO BANK, N.A.; ZIVAK PLUMBING, INC.; V&V DEVELOPMENT, CORPORATION; SUBWAY REAL ESTATE, LLC; AMERICAN MULTI-CINEMA, INC.; and UNKNOWN OWNERS AND NONRECORD CLAIMANTS, Defendants (Truco MP, LLC, and Randhurst Improvements, LLC, Defendants-Appellees). |
| District & No. | First District, Sixth Division<br>Docket No. 1-18-0539 |
| Filed | February 8, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, Nos. 16-CH-6729, 16-CH-6734; the Hon. Anthony C. Kyriakopoulos, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Offices of John F. Argoudelis, LLC, of Plainfield (John F. Argoudelis, of counsel), for appellant.<br><br>Kluever & Platt, LLC, of Chicago (Blake A. Strautins, of counsel), for appellee Truco MP, LLC.<br><br>Novak and Macey LLP, of Chicago (Mitchell M. Marinello and Yvette V. Mishev, of counsel), for other appellee. |

Panel                          PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff MEP Construction, LLC (MEP), filed a complaint against defendants which included Truco MP, LLC (Truco), and Randhurst Improvements, LLC (Randhurst). MEP's complaint contained three counts: (1) foreclosure of a mechanic's lien, (2) breach of contract, and (3) *quantum meruit*. Truco moved for partial summary judgment on the mechanic's lien count pursuant to section 2-1005(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005(a) (West 2016)). Truco argued that MEP's lien, which was 51% more than the amount actually owed it, amounted to constructive fraud. The circuit court granted Truco's motion, and MEP now appeals the court's order. We affirm.

¶ 2                                  BACKGROUND

¶ 3      On August 21, 2017, MEP filed its three-count "complaint to foreclose upon mechanic's lien and other relief." The complaint alleged that, in April 2014, MEP and Truco entered into a verbal contract in which MEP would provide "construction management and related services" to Truco for the purpose of building out Truco's restaurant located in Mount Prospect, Illinois. The complaint further alleged that Truco leased the restaurant property from Randhurst, the owner.[1] Under the contract, MEP offered to perform work for a cost of $791,781.16, which Truco accepted. The parties later agreed to have MEP perform additional work of about $80,000.

¶ 4      MEP further alleged that it "fully performed" its contractual obligations as of May 27, 2015. MEP claimed that it had completed work worth $791,781.16 under the contract, but Truco only paid $612,447.15 and refused to pay anything further. On September 24, 2015, MEP recorded a mechanic's lien with the Cook County Recorder of Deeds. The lien is attached as an exhibit to the complaint. The lien, recorded as document No. 1526757458, lists Truco, Randhurst, and Randhurst Shopping Center, LLC, as defendants and indicates a claim in the amount of $251,870.45 owed only to MEP.

¶ 5      On October 27, 2017, Truco filed a motion for partial summary judgment on the mechanic's lien count pursuant to section 2-1005(a) of the Code. Truco argued that MEP's mechanic's lien of $251,870.45 was constructively fraudulent because MEP only performed $123,134.45 of work, and that the remaining amount was performed by various subcontractors at the property "with which MEP had no contract and for which MEP was not responsible for paying." Truco attached the August 2015 sworn statement of MEP's president, Jason Morales, that MEP had submitted to Truco. The statement indicated that the $251,870.45 amount in the mechanic's lien comprised the following amounts: $123,134.45 payable to MEP; $78,585

---

[1]MEP's complaint alleged that, at the time of contract formation, the property was owned by Randhurst Shopping Center, LLC, but that entity conveyed the property to Randhurst in June 2015.

payable to V&V Development, Corp. (V&V); $50,000 payable to Zivak Plumbing, Inc. (Zivak); and $150 payable to Fox Valley Fire & Safety.

¶ 6    Truco further included various facts developed during the discovery process.[2] Truco had issued a document request to MEP asking for all documents showing all payments that MEP made for work performed either "by MEP or at the direction of MEP." MEP responded, however, that all "contractors, subcontractors and material were paid directly by Truco." In addition, Truco made a discovery request for all contracts between MEP and "any and all contractors, sub-contractors or other persons with whom MEP contracted for purposes of performing work" at the property. MEP's response, however, was that all contractors and subcontractors "contracted directly with Truco" and were paid directly by Truco. Morales signed these responses under verification pursuant to section 1-109 of the Code (735 ILCS 5/1-109 (West 2016)). Finally, Truco included an October 13, 2017, letter its attorney sent to MEP's attorney. The letter explained the discrepancies noted above and suggested that the statements in the mechanic's lien constituted constructive fraud. The letter demanded that MEP voluntarily dismiss the mechanic's lien count and release the lien.

¶ 7    MEP's response argued that, "[b]y agreement between MEP and Truco, Truco made payments to the contractors directly, but the contractors submitted waivers to MEP for payment and MEP sought payment for all of the contractors from Truco on their behalf at all times." MEP attached Morales's affidavit, which attested to that fact. MEP further acknowledged its statement in the interrogatories that it did not contract directly with the other contractors and that Truco directly paid them, but MEP nonetheless argued that "the overwhelming majority of the facts, including Truco's verified answers to Zivak and V&V's complaint[,] indicate that MEP may have in fact acted as a general contractor in some capacity."

¶ 8    On January 31, 2013, the circuit court held a hearing on Truco's motion to compel MEP to respond to its discovery requests. MEP's counsel explained to the court that there were no documents substantiating MEP's assertion that it was responsible for ensuring Truco paid the various contractors. Instead, MEP sought payment via text message or e-mail. The court recounted MEP's answers that Truco directly paid MEP and all contractors and that Truco also directly paid for all materials. The court stated, "I read this and it sounds as if MEP had nothing to do with those other individuals." MEP's counsel pointed out that "all of these other people"—such as the electrician and plumber—were "his [*i.e.*, Morales's] people that he brought in." The court, however, replied that "Bringing the plumber and *** the electrician in doesn't automatically make them subs," with which MEP's counsel agreed. Finally, MEP's counsel also agreed with the court's characterization that counsel was saying "basically, 'My pockets are emptied as to anything that I know other than what I've supplied.' "

¶ 9    On February 27, 2018, the circuit court granted Truco's motion for summary judgment, dismissed the mechanic's lien count with prejudice, and found, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), that "this is a just and final order with no cause to delay enforcement or appeal." This appeal followed.

<hr/>

[2]These discovery matters arose in conjunction with a related lawsuit that V&V and Zivak filed against MEP and the other defendants in this case. The circuit court consolidated that related case (16-CH-6729) into the case at issue in this appeal (16-CH-6734).

¶ 11    MEP contends that the circuit court erroneously granted Truco's motion for summary judgment. Specifically, MEP argues that the court improperly "grasped onto the single statement that MEP made in its production request answer[:] that the subcontractors contracted with Truco." MEP further asserts that, if the court's ruling stands, then it will "necessarily" establish under the related lawsuit (filed by V&V and Zivak against MEP and the other defendants) that "Truco is under contract with Zivak and V&V and [thus] liable to them for whatever amounts they can prove they are owed." Finally, MEP complains that the court reached its conclusion "based upon very few facts produced during written discovery." MEP asserts that oral discovery, which had not taken place prior to summary judgment, "most likely would" establish whether MEP was either (1) a general contractor, which would allow it to file a mechanic's lien for all amounts owed to itself and the subcontractors, or (2) a construction manager, which it stated in its sworn statements.

¶ 12    Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). Summary judgment is a drastic measure and should only be granted when the moving party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). To determine whether there is a genuine issue of material fact, we construe the pleadings, depositions, admissions, and affidavits strictly against the moving party and liberally in favor of the opponent. *Id.* at 131-32. If reasonable people would draw divergent inferences from undisputed facts, summary judgment must be denied. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 13    However, "[s]tatements in an affidavit which are based on information and belief or which are unsupported conclusions, opinions, or speculation are insufficient to raise a genuine issue of material fact." *Outboard Marine*, 154 Ill. 2d at 132. Unless they are the product of mistake or inadvertence, a party's admissions contained in an original verified pleading are judicial admissions that bind the pleader throughout the litigation, even after the filing of an amended pleading that supersedes the original. *Konstant Products, Inc. v. Liberty Mutual Fire Insurance Co.*, 401 Ill. App. 3d 83, 86 (2010). Moreover, "summary judgment requires the responding party to come forward with the evidence that it has—it is the put up or shut up moment in a lawsuit." (Internal quotation marks omitted.) *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 14. We review the circuit court's decision on a motion for summary judgment *de novo*. *Id.*

¶ 14    The central issue in this case concerns constructive fraud in the filing of a mechanic's lien. The Mechanics Lien Act (Act) (770 ILCS 60/1 *et seq.* (West 2016)) is a comprehensive statutory enactment that outlines the rights, responsibilities, and remedies of parties to construction contracts, including owners, contractors, subcontractors, and third parties. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 353 (2008). The overall purpose of the Act is to require the individual with an interest in real property to pay for improvements or benefits that were induced by his or her own conduct. *Id.* The right to a mechanic's lien claim, however, is a statutory right in derogation of the common law, so a contractor must strictly comply with the requirements of the Act to be eligible for relief. *Id.* Under the Act, a "contractor" includes both general contractors and "construction managers." *Id.* at 353-54.

¶ 15 Section 7 of the Act provides in relevant part that no lien "shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this Act, unless it shall be shown that such error or overcharge is made with intent to defraud." 770 ILCS 60/7 (West 2016). "Section 7 is intended to protect an honest lien claimant who makes a mistake rather than a dishonest claimant who knowingly makes a false statement." *Peter J. Hartmann Co. v. Capitol Bank & Trust Co.*, 353 Ill. App. 3d 700, 706 (2004). If, however, a lien claimant knowingly files a lien containing a substantial overcharge, the claim should be invalidated on the basis of constructive fraud. *Id.* The intent to defraud may be inferred from "documents containing overstated lien amounts combined with additional evidence." *Cordeck*, 382 Ill. App. 3d at 378. An overstatement along with evidence that the claimant knew the lien was overstated has been held sufficient to support a constructive fraud finding. See *Fedco Electric Co. v. Stunkel*, 77 Ill. App. 3d 48, 50-51 (1979).

¶ 16 In this case, construing the pleadings, depositions, admissions, and affidavits strictly against Truco and liberally in favor of MEP, as we must (see *Outboard Marine*, 154 Ill. 2d at 131-32), we hold that the circuit court properly granted summary judgment in favor of Truco. The evidence established that, although MEP's mechanic's lien indicated that it (and no other entity) was owed over $250,000, its president (Morales) admitted in his sworn statement and in his sworn answers to Truco's interrogatories that MEP only performed about $124,000 in work. The remaining amount, according to Morales, was owed to other contractors (such as V&V and Zivak) who had no contractual relationship (or assignment agreement) with MEP. Although MEP asserted that it "brought on" certain of these contractors, such as the plumbing contractor and the electrical contractor, MEP provided no evidence it had a contract with those other contractors that gave MEP the right to collect amounts due them on their behalf. In fact, counsel for MEP conceded—*immediately after* noting that MEP brought those contractors on—that "Truco was going to pay them directly." In addition, two weeks before Truco filed its motion for partial summary judgment, it sent a letter to MEP advising it of the discrepancies, which Truco believed constituted constructive fraud. MEP, however, neither dismissed its mechanic's lien count nor amended its mechanic's lien; instead, it did nothing, leaving in place a mechanic's lien that was more than 100% overstated. This court has previously held that substantially lower overstatements constituted constructive fraud. In *Lohmann Golf Designs, Inc. v. Keisler*, 260 Ill. App. 3d 886, 891-92 (1994), the court found that a lien overstatement on three properties of 38%, 82%, and 79% respectively, constituted constructive fraud. The *Lohmann* court relied upon two prior decisions. In one, "the lien claimant sought 26.5% more than that to which he was entitled." *Id.* at 892. In the other, "the overcharge was approximately 87.5%." *Id.* On these facts, the court correctly granted summary judgment in favor of Truco.

¶ 17 Moreover, MEP's reliance upon *Roy Zenere Trucking & Excavating, Inc. v. Build Tech, Inc.*, 2016 IL App (3d) 140946, in support of this point is misplaced. There, the evidence adduced at trial indicated that the plaintiff subcontractor approached the general contractor "each time they had unplanned expenses for the project" and the general contractor "told plaintiffs to proceed with the work," and "[b]ased on [the general contractor's] representation that the change orders were approved, plaintiffs continued with the work, making the necessary extra expenditures." *Id.* ¶ 46. Here, by contrast, there is nothing to indicate that the other contractors had a contractual relationship with MEP, so MEP cannot justify the overstatement of its lien by nearly double the amount it is owed. Therefore, *Roy Zenere* does not rescue this claim.

¶ 18 MEP also argues that the circuit court's summary judgment ruling, if affirmed, would constitute a ruling in favor of V&V and Zivak in their related lawsuit. This argument fails for multiple reasons. First, as Truco points out, MEP failed to raise this argument in the court below; accordingly, it is forfeited. "It is well settled that issues not raised in the trial court are deemed waived and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). For this reason alone, we may reject MEP's argument. Moreover, we are puzzled as to how a finding that there was no contract between MEP and V&V or Zivak conclusively establishes that (1) there was a contract between Truco and V&V, Zivak, or any other purported subcontractor or (2) the actual amount (if any) Truco owes any other party. MEP's argument on this point is meritless.

¶ 19 Finally, we reject MEP's complaint that the circuit court erroneously reached its conclusion because there was an insufficient amount of discovery at the time of summary judgment and oral discovery "most likely would" shed light on whether MEP was a general contractor or a construction manager. Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013) provides in part as follows:

"If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure ***, naming the persons and showing why their affidavits cannot be procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion, or granting a continuance to permit affidavits to be obtained, or for submitting interrogatories to or taking the depositions of any of the persons so named, or for producing documents in the possession of those persons or furnishing sworn copies thereof. The interrogatories and sworn answers ***, depositions ***, and sworn copies of documents *** shall be considered with the affidavits in passing upon the motion."

¶ 20 In essence, "Rule 191(b) permits a party filing pleadings pertaining to summary judgment *** to submit an affidavit stating that material facts are known only to persons whose affidavits the affiant has been unable to secure by reason of hostility or otherwise." *Cordeck*, 382 Ill. App. 3d at 344. If a party fails to attach a Rule 191(b) affidavit to its pleading to address its need for further discovery, then it may not subsequently "seek reversal of the trial court's order on the basis that it was denied important discovery." *Id.*; see also *Korzen*, 2013 IL App (1st) 130380, ¶ 48 ("Parties who fail to file Rule 191(b) affidavits cannot complain that the 'discovery process was insufficient or limited.' " (quoting *Kane v. Motorola, Inc.*, 335 Ill. App. 3d 214, 225 (2002))).

¶ 21 Here, MEP did not file a Rule 191(b) affidavit requesting more time or more discovery. Instead, it merely complains that the circuit court granted summary judgment even though depositions had not been completed. MEP, however, did not ask the court to put anything on hold pending completion of those depositions, nor does the record reveal that any depositions had been (or were likely to be) scheduled. We further note that counsel for MEP agreed with the court that it had "emptied its pockets" with respect to the evidence it had that would support its mechanic's lien that included other contractors' work. Since MEP failed to explain to the circuit court, via a Rule 191(b) affidavit, the material facts that MEP could not secure, it may not complain on appeal that the discovery process was limited and that we must reverse the circuit court's decision. See *Cordeck*, 382 Ill. App. 3d at 344; *Korzen*, 2013 IL App (1st) 130380, ¶ 48. MEP's argument on this point is therefore unavailing.

¶ 22                           CONCLUSION

¶ 23       The circuit court did not err in granting defendants' motion for partial summary judgment on the mechanic's lien foreclosure count. Accordingly, we affirm the court's judgment.

¶ 24       Affirmed.