FIRST DIVISION
DECEMBER 31, 2007

No. 1-07-0421

| | | |
|---|---|---|
| CYCLONAIRE CORPORATION, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CH 21746 |
| | ) | |
| ISG RIVERDALE, INC., | ) | Honorable |
| | ) | Clifford L. Meacham, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE ROBERT E. GORDON delivered the opinion of the court:

Plaintiff, Cyclonaire Corporation, appeals from a judgment of the circuit court of Cook County, finding that plaintiff's subcontractor's mechanic's lien was invalid for failure to strictly comply with the 90-day written notice period mandated by section 24(a) of the Mechanics Lien Act. 770 ILCS 60/24(a)(West 2006). The trial court found that plaintiff's notice of lien was sent outside the 90-day written notice period, and found that any services performed and replacement parts provided by plaintiff during the 90-day period preceding the notice of plaintiff's lien constituted warranty service that could not extend the time for written notice. On appeal, plaintiff contends that (1) the trial court's judgment was against the manifest weight of the evidence, and (2) the trial court erred by excluding from evidence, plaintiff's exhibits Nos. 45 and 46, constituting internal

shipping and invoicing documents, which plaintiff claims would have proved that plaintiff's last date of performance fell within the applicable 90-day period.

BACKGROUND

Defendant ISG Riverdale, Inc., owns and operates a steel mill in Riverdale, Illinois. In July of 2003, defendant entered into a contract with general contractor Fairfield Engineering Co. for a flux delivery system to convey lime, dolo lime, and coal into a basic oxygen furnace at defendant's steel mill facility. Fairfield elicited bids from subcontractors for the delivery of the flux delivery system equipment. Plaintiff's final written proposal to Fairfield dated May 14, 2003, noted that installation of the equipment was to be performed "BY OTHERS" rather than plaintiff.

Fairfield executed a written purchase order with plaintiff for the delivery of five units of equipment at ISG's facility. The written contract between plaintiff and Fairfield consisted of Fairfield purchase order No. 24806-001A and three change orders. The contract specified that the project would be completed in three phases. Phase I consisted of conveyors 1 and 2. Phase II consisted of conveyors 3 and 4. Finally, Phase III consisted of conveyor 5. The equipment contract provided that plaintiff was to deliver all of its equipment by "approximately" December 15, 2003.

The equipment was delivered on December 16, 2003. At trial, all of the witnesses testified that plaintiff's equipment did not function properly. All of the witnesses substantially agreed that the performance problems were due to the fact that certain parts of the equipment were too small, which prevented sufficient airflow within the flux

delivery system to allow the equipment to function properly. In response, plaintiff served and provided replacement parts for the equipment. At trial, plaintiff contended that these services constituted "start-up" services that were part of the parties' written contract. Plaintiff contends that the last day of performance was on February 6, 2004. Defendant contended that these services constituted warranty services, which were not part of the contract, but rather subsequent to it. Under defendant's version, the last day of performance under the contract was on or before December 31, 2003, when plaintiff delivered its equipment to defendant's steel mill.

### A. Plaintiff's Notice of Mechanic's Lien Claim

Plaintiff cause an original subcontractor's claim for lien in the amount of $120,465.26 to be filed with the office of the Cook County Recorder of Deeds on June 22, 2004, as document number 0417432102. Written notice of plaintiff's lien claim was sent to defendant on May 4, 2004.

### B. Plaintiff's Equipment Warranty

Plaintiff's equipment contract contained a "system performance guarantee" which provided: "If it is determined that the cause of the non-performance (or potential non-performance) was known or should have been known by [plaintiff], due to their experience, then [plaintiff] will correct the performance issue at no additional cost to Fairfield Engineering." The "second-to-none" system performance guarantee was written by Jim Ketcham, plaintiff's regional sales manager, and guaranteed that plaintiff's equipment would perform as intended and without Fairfield offering or

providing any engineering design assistance or any additional equipment based on plaintiff's final design.

## C. Trial Witnesses

Several witnesses testified at trial. Jim Boger is defendant's plant engineer who oversaw the installation of the flux delivery system. Scott Schmid is plaintiff's vice president of engineering. As noted, Jim Ketcham is plaintiff's regional sales manager. John Andrews is plaintiff's service manager and oversaw the project.

Jim Boger, defendant's plant manager, testified that he maintained a log, documenting important points and corresponding dates concerning the project. Based upon this log, Mr. Boger testified that Phase I of the project, consisting of conveyors 1 and 2, was commissioned and on-line on December 22, 2003. He further testified that Phase II, consisting of conveyors 3 and 4, was commissioned and on-line on January 9, 2004. Finally, he testified that the last conveyor was commissioned and on-line as of January 15, 2004. By "commissioned," Mr. Boger meant that the equipment was "actually put into production." Mr. Boger testified that pursuant to the written contract, plaintiff was not to perform any "start-up" services; rather, Fairfield, defendant's own personnel, and another subcontractor, LML, performed "start-up" services. Mr. Boger testified that plaintiff's service personnel were present during the "start-up" and initial operations. He stated that plaintiff's personnel were on site because the equipment was experiencing a "plugging" problem. Mr. Boger testified that the plugging was primarily

4

due to the fact that the injection lines were too small, which prevented sufficient airflow to propel material into the furnace(s).

Scott Schmid, plaintiff's vice president, testified that he visited the steel mill on December 29 through December 31 of 2003 to address the plugging problem and determined it was due to improper sizing of valves and elbows. He modified the system to increase airflow. Mr. Schmid testified that plaintiff did not bill defendant for these visits because plaintiff treated the plugging problem as a warranty issue. He testified that he was aware of three separate categories of warranty issues with respect to plaintiff's equipment: (1) plugging, which commenced at the initial start-up of Phase I; (2) excessive and premature wear and abrasion (regarding pinch valves and flexible connectors); and (3) problems getting Phase III, the coal injection system, operational (this equipment did not function as designed until April 2004). With respect to Phase III, Mr. Schmid testified that LML commissioned conveyor 5.

Jim Ketcham, plaintiff's regional sales manager, testified that he attended a pre-bid meeting with Fairfield on February 25, 2003. He reviewed the notes Fairfield recorded at this meeting. He testified that no note made reference to plaintiff performing any start-up services at the Riverdale property. Mr. Ketcham testified that he prepared and signed plaintiff's revision "B" proposal, which was dated May 2, 2003. He testified that revision "B" stated that start-up services were not included unless "specifically noted." No start-up services were noted in the revision "B" proposal, although the documents included a rate schedule for services. The rate schedule reflected rates that

would be charged if such services were ordered. After plaintiff performed successful trials using defendant's raw materials, Mr. Ketcham sent a letter dated May 14, 2003, to Fairfield stating, "based on our successful test, we can provide 'Second to None' Performance Warranty that this system will perform as quoted." Mr. Ketcham also testified that he prepared and signed the revision "C" proposal dated May 14, 2003, and that proposal was accepted by Fairfield. Mr. Ketcham testified that revision "C" stated that "installation" would be performed "BY OTHERS," that start-up services were not included unless specifically noted in the proposal, and that no such services were noted in the proposal. Mr. Ketcham testified that the written contract between plaintiff and Fairfield consisted of four documents: the purchase order and three change orders. Mr. Ketcham testified that the third change order specified that delivery of all equipment was to be made by December 15, 2003. He testified that delivery occurred on December 16, 2003. Mr. Ketcham further testified that plaintiff issued only four invoices under the agreement: (1) an October 29, 2003, invoice for $158,685; (2) a November 17, 2003, invoice for $1,325; (3) a December 13, 2003, invoice for $1,325; and (4) a December 31, 2003, invoice for $60,613. Mr. Ketcham conceded that several items included in plaintiff's mechanic's lien claim were for warranty charges that he would not expect a customer to pay for.

John Andrews, plaintiff's service manager, testified concerning several service visits he made to the Riverdale property. On cross-examination, Mr. Andrews was asked if the December 19, 2003, service visit was a warranty visit. He stated that he did not

6

know if the visit was a warranty visit, but he did state that plaintiff did not charge Fairfield for labor costs because plaintiff want to show "good will." When confronted with his discovery deposition testimony, Mr. Andrews changed his testimony and stated that the December 19, 2003, service visit was a warranty visit. Mr. Andrews, like Mr. Ketcham, testified that plaintiff's mechanic's lien included warranty charges. Finally, Mr. Andrews testified that plaintiff does not provide start-up services for all customers, as some perform start-up procedures on their own.

### D. Plaintiff's Rebuttal

On the last day of trial, plaintiff sought to introduce into evidence, plaintiff's exhibits Nos. 45 and 46, which constituted internal shipping and invoicing documents, which plaintiff claims would have proved that plaintiff's last date of performance fell within the applicable 90-day period mandated by the Mechanic's Lien Act and would have rebutted Mr. Boger's testimony that the last conveyor was commissioned and on-line by January 15, 2004.

Defendant objected to the introduction of plaintiff's exhibits Nos. 45 and 46, arguing that the documents had not been disclosed to defendant during discovery.

Plaintiff voluntarily withdrew plaintiff's exhibit No. 45 before the trial court could rule on defendant's objection.

After reviewing defendant's requests for production Nos. 28 and 34, the trial court found that the documents comprising plaintiff's exhibit No. 46 "[fell] within the universe of documents that were requested" and "should have been produced earlier."

7

The trial court also noted that there was no valid justification for plaintiff's "eleventh hour" discovery delay tactics.

Request for production No. 28 requested production of "all invoices, bills, correspondence, records of payment or other communications issued by Cyclonaire to Fairfield or between Cyclonaire and Fairfield in connection with, or referring or relating to, the Equipment, the Fairfield Purchase Order or [defendant]." Plaintiff did not object to this request for production.

Request for production No. 34 requested production of "all Documents used, reviewed, consulted, referred to, relating to or relied upon in preparing your responses to any of these discovery requests or identified, referred to or referenced therein." Plaintiff objected to this request for production, but referred defendant to a number of documents produced in response to the request.

After the trial court's ruling, plaintiff made an offer of proof. Plaintiff contended that the documents would have rebutted Mr. Boger's testimony that the last day of performance was on January 15, 2004, because plaintiff's exhibit No. 46 would have shown that the installation of the replacement parts necessary to the commission of conveyor 5 occurred after January 15, 2004.

### E. The Trial Court's Ruling

The trial court found that notice of plaintiff's subcontractor's lien claim was sent outside of the 90-day written notice period mandated by section 24(a) of the Mechanic's Lien Act. 770 ILCS 60/24(a)(West 2006). The court also found that the service

8

performed and replacement parts provided by plaintiff during the 90-day period preceding the notice of plaintiff's mechanic's lien constituted warranty service that could not extend the time for serving notice.

This appeal followed.

ANALYSIS

As noted, the trial court found that notice of plaintiff's subcontractor's lien claim was sent outside of the applicable 90-day period mandated by section 24(a) of the Act. This finding was a finding of fact and, as such, is entitled to great deference. Findings of fact are reviewed under the manifest weight of the evidence standard. *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 542 (2007). This standard is met only " 'where the opposite conclusion is clearly evident or where the findings *** are unreasonable, arbitrary and not based upon any of the evidence.' " [Citation.] *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992). "A reviewing court should not overturn a trial court's finding merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the fact finder." *Clean World Engineering, Ltd. v. MidAmerica Bank, FSB,* 341 Ill. App. 3d 992, 997 (2003). "The trial judge, as the trier of fact, is in a position superior to a reviewing court to observe witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive." *Clean World Engineering, Ltd.*, 341 Ill. App. 3d at 997.

Plaintiff contends that the trial court's finding in the case at bar, that notice of plaintiff's lien claim was outside of the applicable 90-day period, was against the manifest weight of the evidence.

Under section 24(a) of the Mechanics Lien Act (Act), a subcontractor must send or serve its notice of lien claim within 90 days after "completion" of his work in order for the claim to be enforceable. 770 ILCS 60/24(a) (West 2006). "This notice requirement is substantial and not merely a limitation on the remedy." *Merchants Environmental Industries, Inc., v. SLT Realty Ltd. Partnership*, 314 Ill. App. 3d 848, 856 (2000), citing *Lundy v. Boyle Industries, Inc.*, 46 Ill. App. 3d 809, 812 (1977) (notice to owner "has been determined to be the very substance upon which a mechanic's lien may be predicated"). Section 24 provides in pertinent part:

"Sub-contractors, or parties furnishing labor, materials, fixtures, apparatus, machinery, or services, may at any time after making his or her contract with the contractor, and shall within 90 days after the completion thereof, or, if extra or additional work or material is delivered thereafter, within 90 days after the date of completion of such extra or additional work or final delivery of such extra or additional material, cause a written notice of his or her claim and the amount due or to become due thereunder, to be sent by registered or certified mail, with return receipt requested, and delivery limited to addressee only, to or personally served on the owner of record or his agent or architect, or the superintendent

10

having charge of the building or improvement and to the lending agency,

if known *** ." 770 ILCS 60/24(a) (West 2006).

Thus the notice must be sent or served within 90 days after completion of the furnishing of labor or materials. Plaintiff's notice of mechanic's lien claim was dated May 4, 2004.

If the completion date were February 6, 2004, as plaintiff claims, then its notice would be timely under the Act. In that regard, defendant argues that the last date of performance under the contract was on or before December 31, 2003, when plaintiff delivered its equipment to defendant's steel mill. Defendant also argues that any work performed during the 90-day period preceding notice of plaintiff's lien claim was non-lienable warranty work.

After reviewing the record of the case at bar, we cannot say that the trial court's judgment that plaintiff's mechanic's lien claim was not timely noticed within 90 days after the completion of its contract was against the manifest weight of the evidence.

All witnesses testified that the contract between plaintiff and defendant called for plaintiff to provide equipment only and no start-up services. The evidence at trial establishes that plaintiff shipped all equipment to be provided under the contract to defendant's facility on December 16, 2003.

Furthermore, Mr. Ketcham testified that plaintiff issued four invoices under the agreement and that the last such invoice was issued on December 31, 2003. As this court

11

held in *Caruso v. Kafka*, 265 Ill. App. 3d 310, 314 (1994), a subcontractor's "final invoice establishes a completion date for the project."

Furthermore, it is well settled under Illinois law that subsequent repair work cannot extend the Act's strict notice and filing deadlines with respect to the original lienable work or material. *Merchants Environmental Industries, Inc.*, 314 Ill. App. 3d at 859, citing *Miller Bros. Industrial Sheet Metal Corp. v. La Salle National Bank*, 119 Ill. App. 2d 23, 30 (1969) (work that is in the nature of maintenance or correction of a completed job rather than work needed for "the completion of the contract itself" will not extend the time in which to file a lien claim).

All of the witnesses at trial testified that plaintiff's equipment failed to operate properly when installed and started. As a result, plaintiff performed warranty services and provided replacement parts under its "second-to-none" system performance warranty. As noted, Mr. Schmid, plaintiff's vice president of engineering, testified that he treated his visits to address the systems plugging problem as a warranty issue. Mr. Ketcham, plaintiff's regional sales manager, conceded that several services that plaintiff billed for were warranty issues that he would not expect a customer to pay for. Accordingly, we find that the trial court's finding that the services performed during the 90 days preceding plaintiff's notice of lien claim were warranty service that did not extend the time for notice was not against the manifest weight of the evidence.

Defendant then argues that the trial court erred by excluding from evidence plaintiff's exhibits Nos. 45 and 46, which plaintiff contends would have proved that the

12

last date of performance fell within the 90-day period preceding plaintiff's notice of mechanic's lien.

Initially, we note that plaintiff voluntarily withdrew its request to admit plaintiff's exhibit No. 45. As such, plaintiff's assignment of error cannot be heard on appeal.

We now address the trial court's exclusion of plaintiff's exhibit No. 46. As noted, request for production No. 28 requested production of "all invoices, bills, correspondence, records of payment or other communications issued by Cyclonaire to Fairfield or between Cyclonaire and Fairfield in connection with, or referring or relating to, the Equipment, the Fairfield Purchase Order or [defendant]." Request for production No. 34 requested production of "all Documents used, reviewed, consulted, referred to, relating to or relied upon in preparing your responses to any of these discovery requests or identified, referred to or referenced therein." Plaintiff did not object to request for production No. 28. Plaintiff objected to request for production No. 34 as being overbroad, but referred defendant to a number of documents produced in response to the request.

"The imposition of sanctions against a party for noncompliance with discovery rules is a matter within the broad discretion of the trial court." *Gausselin v. Commonwealth Edison Co.*, 260 Ill. App. 3d 1068, 1081 (1994). "The exercise of such discretion will not be disturbed unless an abuse is apparent." *Gausselin*, 260 Ill. App. 3d at 1081. "In determining whether noncompliance with discovery rules is unreasonable, the standard is whether the offending party's conduct can be characterized as a deliberate

13

and pronounced disregard both for the discovery rules and for the court." *Gausselin*, 260 Ill. App. 3d at 1081. "Factors to be considered include surprise to opposing counsel, prejudicial effect, diligence of opposing counsel in seeking discovery, timely objection and good faith." *Gausselin,* 260 Ill. App. 3d at 1081.

Considering the foregoing factors, we cannot say that the trial court abused its discretion in excluding plaintiff's exhibit No. 46. Plaintiff sought to introduce the exhibit on the very last day of trial. The prejudicial effect to defendant in not showing that this information was going to be used at trial would have been great, if the documents sought to be introduced would have, as plaintiff claims, proven that the last day of performance of the written contract fell within the 90-day period preceding plaintiff's notice of mechanic's lien. Opposing counsel was diligent in seeking discovery as evidence by the aforementioned requests for production. Opposing counsel also timely objected to the introduction of plaintiff's exhibit No. 46.

Furthermore, even if the trial court abused its discretion in excluding plaintiff's exhibit No. 46, the exclusion was harmless error as the documents sought to be introduced only invoiced the replacement parts that the trial court had already held constituted warranty service and could not extend the time for noticing plaintiff's mechanic's lien. This evidence would not have changed the result of the trial.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

WOLFSON and GARCIA, JJ., concur.