CORDECK SALES, INC., Plaintiff, v. CONSTRUCTION SYSTEMS, INC., *et al.*, Defendants (First Midwest Bank, Appellant, v. Construction Systems, Inc., *et al.*, Appellees).

First District (3rd Division)   No. 1—08—0554

Opinion filed September 9, 2009.—Rehearing denied November 6, 2009.

QUINN, J., dissenting.

Much Shelist Denenberg Ament & Rubenstein, P.C., of Chicago (Stephen P. Kikoler and James M. Dash, of counsel), for appellant.

Fuller & Berres, of South Barrington (Karen A. Berres, of counsel), for appellee Construction Systems, Inc.

Stephen D. Richek, of Chicago, for appellee Cordeck Sales, Inc.

JUSTICE COLEMAN delivered the opinion of the court:

Construction Systems, Inc., and Cordeck Sales, Inc., subcontractors on a stalled construction project, filed claims to enforce mechanics' liens for sums due for their services. The circuit court of Cook County found that the contractors held enforceable liens for a total of $1,786,700 plus interest. First Midwest Bank, the successor of the project's original lender and the holder of a mortgage lien subordinate to the mechanics' liens, appeals the finding that the liens were valid. We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

In June 2000, Construction Services International was engaged to act as the general contractor for a condominium conversion project in Chicago. In March 2002, Construction Services entered into a subcontract with Construction Systems, Inc. (CSI), an unrelated entity, to fabricate, supply and install structural steel for the project. In April 2002, CSI engaged Cordeck Sales, Inc. (Cordeck) to erect the steel at the project site.

On January 23, 2003, Cordeck recorded a lien which asserted that it had completed work on the project "on or about December 17, 2002," that its work had been worth $1,523,099.22, that it had been paid $519,609.52, and that it was due $1,003,489.70. According to Cordeck, its work on the project consisted of $960,000 of items specified by its contract with CSI plus $563,099.22 in extras generated by change orders issued during the project. In April 2003, Cordeck filed an action seeking foreclosure of its lien and damages from CSI for its failure to pay Cordeck's invoices for its work. Several subcontractors joined the action in attempts to foreclose their own liens; an appeal of

the dispositions of several such claims was adjudicated by this court in *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334 (2008) (*Cordeck I*).

CSI's responsive pleading denied that it owed any sum to Cordeck and denied that Cordeck had performed extra work on the project. CSI alleged that Cordeck had breached their contract by performing deficiently and by abandoning the project before the completion of the agreed work. CSI asserted Cordeck's nonperformance as a defense to Cordeck's claims and as a basis for an award of damages against Cordeck. On July 30, 2003, CSI sent its notice of a lien on the project property to various parties, alleging that it had substantially performed all of its work on the project as of June 18, 2003, and that it was due $1,839,536.36 as of that date. On September 25, 2003, CSI recorded its lien, asserting that it was due $2,194,973 under the base contract and $838,556 in extras, and that the total unpaid balance had increased to $1,979,412. CSI amended its answer and counterclaim in Cordeck's litigation to add a count for foreclosure of its lien.

First Midwest Bank (FMB) contested the validity of the CSI and Cordeck liens on several grounds. CSI and Cordeck settled their claims against each other, and Cordeck amended its remaining lien foreclosure complaint by dropping its claim for the $560,000 in extra work and change orders, thereby reducing the recovery sought to $415,430.48 plus interest. The trial court ruled that CSI held a valid lien for $1,786,700.65 plus interest, and that this amount included a valid Cordeck lien for $415,430.48 plus interest. FMB then brought the instant appeal.

## ANALYSIS

### I. Sufficiency of CSI Lien's Property Description

■ FMB's initial contention in this court is that CSI's lien failed to sufficiently describe the property encumbered by the lien. Section 7 of the Mechanics Lien Act provides that no contractor shall be allowed to enforce a lien unless it files with the recorder of deeds in the county of the property a claim for lien that includes "a sufficiently correct description of the lot, lots or tracts of land to identify the same." 770 ILCS 60/7 (West 2002). In the instant proceeding, it is undisputed that a description that included individual condominium unit numbers and ownership percentages was recorded with the property owner's condominium declaration nearly one month before the filing of CSI's lien, and that the lien did not include the unit-specific description. FMB argues that *Steinberg v. Chicago Title & Trust Co.*, 142 Ill. App. 3d 601 (1986), establishes that a lien is not sufficiently descriptive if it does not include the most current legal description of the property.

In *Steinberg*, the contractor filed a lien describing the property by its metes and bounds, not by the more specific plat of survey description that had been filed after the property had been carved into subdivisions and the subdivisions further partitioned into individual lots. The *Steinberg* court specifically noted that the property description in the contractor's lien had covered the entire subdivision, while the contractor's work and its right to a lien applied only to some of the lots in the subdivision. 142 Ill. App. 3d at 604. Accordingly, the court concluded: "We do not believe that the three perimeter metes and bounds descriptions contained in [the contractor's] lien would provide the average third-party purchaser or encumbrancer with enough information to readily identify the property affected by the lien through the use of local public records." 142 Ill. App. 3d at 606. In affirming the trial court's holding that the contractor's lien was invalid, the *Steinberg* court stated that "a lien claimant must use the legal description of the property as indicated by plat when such a plat has been recorded in order to bind third parties." 142 Ill. App. 3d at 606.

We are unpersuaded by FMB's assertion that *Steinberg* establishes a blanket requirement that a lien use the most recent legal description of the property. *Steinberg*'s clear holding is that if a subsequent plat of survey is available, a metes and bounds description that fails to specify individual parcels affected by the lien may be found inadequate under section 7 of the Act. Neither *Steinberg* nor the language of the Act required the trial court in the instant case to invalidate CSI's lien upon the mere showing that a more recent legal description of the property had been available.

The court was instead required to determine the lien's compliance with section 7's mandate that the description be sufficient to identify the affected land. We find no basis for disturbing the court's conclusion that the description met the statutory standard. CSI's lien used a plat of survey description, not the metes and bounds references at issue in *Steinberg*. The CSI lien also included the street address commonly used to describe the property and the property index numbers that identify the property's parcels in the office of the Cook County recorder of deeds. The trial court heard uncontradicted testimony from an employee of the recorder's office which established that a lien recorded on the property as a whole would appear in a search of the chain of title of each unit included in the condominium declaration. In further contrast to *Steinberg*, there was no discrepancy between the property described by CSI's lien and the property the company was entitled to encumber as a result of its work. We conclude that the trial court correctly determined that the property description in CSI's lien

was adequate to meet the standard of the Act, and we reject FMB's assertion that the lien must be invalidated on that basis.

## II. Three-Year Deadline for Completion of Work

■ Section 6 of the Mechanics Lien Act states: "In no event shall it be necessary to fix or stipulate in any contract a time for the completion or a time for payment in order to obtain a lien under this act, provided, that the work is done or material furnished within three years from the commencement of said work or the commencement of furnishing said material." 770 ILCS 60/6 (West 2002). FMB contends that section 6 renders the liens of CSI and Cordeck unenforceable.

■ The trial court did not consider the merits of this argument. It construed the argument to be an affirmative defense and held that FMB had forfeited the issue by failing to plead it as such. We disagree. When a right of action unknown to common law is created by statute, a plaintiff's compliance with the statute's requirements is an element of his cause of action. *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 506 (1997). In such actions, a defendant's assertion that these requirements were not met cannot be considered a surprise to the plaintiff and will not be construed to be an affirmative defense. *Klopfer*, 286 Ill. App. 3d at 506. The rights granted by the Mechanics Lien Act are creations of statute, not common law. *First Federal Savings & Loan Ass'n v. Connelly*, 97 Ill. 2d 242, 246 (1983). A lienholder must therefore prove compliance with the Act's provisions to establish his right to the statutory remedy and cannot claim surprise when a defendant attempts to defeat his claim by proof of noncompliance. We hold that FMB did not forfeit its right to contest CSI's compliance with section 6 of the Act by failing to plead the issue as an affirmative defense and that the argument is properly addressed on its merits here.

■ FMB asserts that Construction Services, the general contractor, began work in June 2000 and continued until October 2003, thereby extending its work beyond the three-year deadline of section 6. FMB argues that the completion deadline imposed by section 6 is for the work of the general contractor and that a subcontractor, though completing its work and perfecting its lien long before the lapse of three years, loses its right to a lien once the general contractor's work continues beyond that span.

In our view, this result is not mandated by the Act. The language of section 6 provides that a contractual completion date is not required to enforce a lien if "the work" is completed within three years of commencement, but does not suggest that "the work" must be considered the work of the general contractor even when the party seeking lien

enforcement is a subcontractor whose own work has been completed within the period.

In *Robb v. Lindquist*, 23 Ill. App. 3d 186 (1974), a contractor sought to enforce two liens generated by his work on adjacent parcels of land held by a single owner. The contractor's work on the first parcel extended for just less than three years, and before that work was completed, he commenced work on the second parcel, resulting in several months of simultaneous work on the two parcels and a total performance period of more than three years. 23 Ill. App. 3d at 187-88. The landowner, objecting to the contractor's attempt to enforce the lien, argued that the work had not been completed within the three-year period required by section 6.

The court rejected this argument. It noted that the work on the two parcels was generated by different contracts and that the work on the two parcels "required different skills and equipment." 23 Ill. App. 3d at 188. The court concluded that the three-year deadline imposed by section 6 began with the commencement of the work for which the lien was sought. 23 Ill. App. 3d at 188-89. It held that the three-year periods were computed separately for the work on each parcel and that each lien was valid because the work generating each lien was completed in less than three years. 23 Ill. App. 3d at 188-89. *Robb* thus establishes that the section 6 time period relates to the work for which a lien is sought.

FMB contends that extending *Robb*'s principles to the instant case would conflict with *VonPlaten v. Winterbotham*, 203 Ill. 198, 205-06 (1903), where our supreme court held that a subcontractor's lien was unenforceable because the general contractor's agreement with the landowner did not comply with section 6. FMB cites *VonPlaten* for the proposition that a subcontractor's compliance with section 6 must be determined by the timing of the general contractor's work. We do not share the bank's view of *VonPlaten*.

In *VonPlaten*, the version of section 6 reviewed by the court precluded lien enforcement if the contractor-landowner agreement failed to specify times for performance and payment. 203 Ill. at 204. The agreement at issue included no such specificity. 203 Ill. at 200-01. The court concluded that an agreement not sufficient to meet the statutory requirement for a contractor's lien was similarly insufficient to support a subcontractor's lien: "Where the contract with the owner is sufficient to create a lien, it might well be implied that the owner, through the agency of the contractor, assents to the sub-contractors' liens by the employment of labor and procuring material to carry out the contract, but if the contract with the owner is inconsistent with the existence of a lien, the creation of a sub-contractor's lien could

rest on no such assumption. No reason is apparent why subcontractors should be permitted to establish secret liens against property not authorized under the original contract or in violation of its terms." 203 Ill. at 205.

It is thus apparent that *VonPlaten* requires reference to the landowner-general contractor agreement for section 6 analysis only to determine whether that agreement, at the time of its execution, permits contractor and subcontractor liens against the property. *VonPlaten* does not link subcontractor lien enforcement to the general contractor's subsequent performance under its agreement with the landowner. This view is supported by section 31 of the Act, which provides for a subcontractor's enforcement of its lien even in the event of the general contractor's failure to complete its contract. 770 ILCS 60/31 (West 2002).

In the instant case, FMB does not suggest that the property owner's original agreement with Construction Services precluded the enforcement of liens by contractors or subcontractors or that it was in violation of the Act at the time of its execution. Accordingly, we conclude that the facts underlying the present appeal are sufficiently distinguishable from those in *VonPlaten* to preclude its dispositive application here. As in *Robb v. Lindquist*, we hold that "the work" to be completed in accordance with the time limits of section 6 is the work for which lien enforcement is sought and that the work was completed within those limits here.

### III. Timeliness of CSI's Lien Filing

■ Section 7 of the Act requires a contractor to file its lien with the recorder of deeds in the county of the property within four months of completion of its work. 770 ILCS 60/7 (West 2002). CSI's lien, filed on September 25, 2003, was thus timely for work completed after May 25, 2003. At trial, CSI moved for summary judgment on the issue of the validity of its lien; FMB responded that CSI failed to prove that its work was completed after the May 25 date and had thus failed to establish that the filing of its lien was timely. As support for this assertion, FMB relied upon logs generated by the project manager, AMEC Construction Management, which, according to the declarations of two AMEC employees, were daily reports of activity on the project, including "the trade contractors that had workers physically present at the Project on that day, the number of workers from each and a general description of what each such trade contractor was doing on that day." The AMEC logs did not indicate that CSI was present at the project at any date from May 25, 2003, through June 18, 2003, the date represented in CSI's lien as the date by which it had completed its work.

The court found the evidence to be insufficient to permit resolution of the completion date of CSI's work and permitted the parties to submit additional evidence. CSI produced an affidavit of its vice president, Perry Haberer, which asserted that he and other CSI employees worked on the project at the job site on June 17, 18 and 19, 2003. The court then granted summary judgment for CSI on the validity of its lien.

The question of whether a contractor's lien was perfected within the statutory periods is a question of fact. *Cyclonaire Corp. v. ISG Riverdale, Inc.*, 378 Ill. App. 3d 554, 559 (2007). Factual issues are properly decided on summary judgment only if, after drawing all reasonable inferences from the evidence in favor of the nonmoving party, the record shows that the issues are not genuinely disputed and that the movant's entitlement to judgment is clear and free from doubt. *Delaney Electric Co. v. Schiessle*, 235 Ill. App. 3d 258, 263-64 (1992). In the instant case, CSI's absence from the project manager's logs on the days it supposedly performed work validating its lien creates an inference that it did not work on those days and the consequential inference that the filing of its lien was untimely. The affidavit of CSI's vice president creates a contrary inference. Though the trier of fact is entitled to choose between the competing inferences in an evidentiary hearing, such disputes are not properly resolved on summary judgment. *Winston & Strawn v. Nosal*, 279 Ill. App. 3d 231, 236 (1996). We reverse the grant of summary judgment for CSI on the validity of its lien and remand for further proceedings on the timeliness of its lien filing.

### IV. Constructive Fraud in the Filing of Cordeck's Lien

■ "Where a lien claimant knowingly files a lien containing a substantial overcharge, the claim should be defeated on the basis of constructive fraud." *Peter J. Hartmann Co. v. Capitol Bank & Trust Co.*, 353 Ill. App. 3d 700, 706 (2004). In the instant case, Cordeck originally filed a lien claim for $1,003,489. This amount was supposedly composed of a $416,000 unpaid balance on the original contract total price of $960,000, plus $588,000 in change orders. Cordeck produced evidence of less than $100,000 in work performed pursuant to change orders, then settled its claim for such work with CSI and amended its complaint to reduce the recovery sought by more than $563,000. FMB asserts that the magnitude of the unexplained reduction compels the conclusion that Cordeck's initial lien claim was intentionally overstated; the bank argues that the entire Cordeck lien should therefore be invalidated.

The mere overstatement of the contractor's claim is insufficient to prove an intent to defraud, however; constructive fraud must be proved by additional evidence from which intent to deceive can be inferred. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 373 (2008) (*Cordeck I*). Illinois courts have consistently based findings of constructive fraud upon the existence of such additional evidence. In *Lohmann Golf Designs, Inc. v. Keisler*, 260 Ill. App. 3d 886 (1994), the contractor filed liens against each of three separate properties for the full amount of the total claimed to be due, resulting in a total lien filing of triple the outstanding debt. 260 Ill. App. 3d at 891-92. In *Fedco Electric Co. v. Stunkel*, 77 Ill. App. 3d 48 (1979), the contractor's president admitted that his lien total had intentionally overcharged and undercredited the property owner, apparently due to animosity resulting from prior difficulties in collecting payment. 77 Ill. App. 3d at 50-51. In *Marsh v. Mick*, 159 Ill. App. 399 (1911), the court found that the contractor's overcharge was a claim for the full amount of a contract that it had not completely performed; the court also found that the overstated liens were intentionally filed to compel the property owners and other lienors to pay him an "unjust amount." 159 Ill. App. at 405. FMB has presented no additional evidence of Cordeck's intent to deceive in the instant case.

However, FMB also asserts that it was denied discovery of a document that may have produced such evidence: the CSI-Cordeck settlement agreement. CSI's answer to Cordeck's original claim alleged that Cordeck sought recovery for work that was substandard or not done at all; CSI also alleged that it incurred expenses to correct and complete Cordeck's work. As previously noted, more than $400,000 of Cordeck's original lien claim was not supported by evidence of authorized work on the project. CSI and Cordeck settled their dispute, and Cordeck abandoned any claim for extras, thus reducing its lien claim by more than half.

In our view, though the relevance of the CSI-Cordeck settlement agreement cannot be conclusively determined in its absence, its potential relevance is clear. To the extent that it demonstrates acknowledgment that any portion of Cordeck's original claim was not asserted for a valid debt, it constitutes the additional evidence that would support FMB's claim for constructive fraud. The broad scope of permitted discovery requires production of evidence if it would be sufficiently relevant and material to be admissible at trial or if it leads to such relevant and material evidence. *Mistler v. Mancini*, 111 Ill. App. 3d 228, 232 (1982).

Though CSI and Cordeck allege that their settlement agreement included a commitment to keep its terms confidential, neither identi-

fies any precedential support for the premise that a mere confidentiality agreement shields material from a valid discovery request. Neither CSI nor Cordeck asserted in the trial court or argues in this court that their agreement is privileged from disclosure under the standards recognized by Supreme Court Rule 201(b)(2) (210 Ill. 2d R. 201(b)(2)).

CSI and Cordeck also contend that their settlement is rendered irrelevant and immaterial by Cordeck's abandonment of its claim for extras and by the trial court's finding that Cordeck's claim was a component of the CSI lien claim, and not a basis for duplicate recovery. We are unpersuaded by this argument.

A finding of constructive fraud as a result of a lien claimant's intentional overstatement of the amount due invalidates the entire lien, not merely the claim for the overcharge. See *Fedco Electric Co. v. Stunkel*, 77 Ill. App. 3d 48 (1979); *Marsh v. Mick*, 159 Ill. App. 399 (1911). Evidence of an intentional overstatement of Cordeck's original lien thus remains relevant to its pursuit of any amount claimed under that lien even after it has abandoned its attempts to recover additional amounts.

In addition, the characterization of Cordeck's lien claim as a mere component of the CSI claim does not foreclose scrutiny of the Cordeck lien. The trial court recognized the possibility that the two entities might pursue their liens independently, with differing degrees of success. Cordeck has apparently acknowledged the same possibility; rather than abandon its own lien foreclosure attempt and rely solely on receiving payment directly from CSI, it has continued to pursue enforcement of its own lien. Accordingly, the court carefully conducted a separate analysis of the validity of each company's lien claim. We believe that the court's approach was correct and that Cordeck's continued litigation of its separate claim requires that it be assessed on its own merit.

We hold that the evidence presented was insufficient to compel a finding of constructive fraud in the filing of Cordeck's lien, but that the CSI-Cordeck settlement agreement was of sufficient potential relevance to require its production to FMB in the absence of some other basis for its withholding. We reverse the court's denial of FMB's motion to compel production of that agreement. We express no opinion on the impact of the agreement on further proceedings regarding the allegation that Cordeck's lien was constructively fraudulent.

### V. Extrinsic Evidence of Innocent Reliance on Lien Waivers

■ When a contractor has waived its lien, that waiver bars its attempt to foreclose on the lien unless the contractor establishes that the defendant did not innocently rely on the lien waiver. *Cordeck I,*

382 Ill. App. 3d at 366-70. *Cordeck I* held that the trial court could properly receive evidence demonstrating FMB's lack of innocent reliance on lien waivers in considering whether contractors had lost their lien enforcement rights, and in the instant case, the court found that CSI and Cordeck had established the absence of innocent reliance by FMB. FMB asks that we revisit *Cordeck I*'s holding, but we find no basis for the conclusion that our prior analysis was in error, and decline the bank's invitation to abandon the *Cordeck I* precedent.

## CONCLUSION

We affirm the trial court's finding that CSI's lien described the property with sufficient specificity to comply with section 7 of the Act. We also affirm the court's rejection of FMB's claim that the CSI and Cordeck liens were invalid because the project extended beyond the three-year deadline imposed by section 6 of the Act. We affirm the finding that CSI and Cordeck provided sufficient proof that FMB did not innocently rely on their lien waivers. We affirm the finding that FMB failed to prove constructive fraud in the filing of Cordeck's lien, but reverse the denial of the bank's motion to compel production of the CSI-Cordeck settlement agreement. We also reverse the grant of summary judgment for CSI on the timeliness of its lien filing. We remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

THEIS, J., concurs.

JUSTICE QUINN, dissenting:

I agree with the majority that CSI's lien described the property with sufficient specificity to comply with section 7 of the Act. I also agree that CSI's and Cordeck's liens were not invalid because the project extended beyond the three-year deadline imposed by section 6 of the Act. I dissent from the majority in that I would affirm summary judgment for CSI on the timeliness of its lien filing and I would affirm the trial court's denial of the motion to compel production of the CSI-Cordeck settlement agreement as being within the broad discretion possessed by the circuit court.

In the instant case, First Midwest moved for partial summary judgment on CSI's counterclaim. CSI then moved for partial summary judgment on the issues of the validity of its lien and the effect of the partial lien waivers. When the parties file cross-motions for summary judgment, "they agree that no genuine issue as to any material facts exists and that only a question of law is involved, and they invite the

court to decide the issues based on the record." *State Farm Fire & Casualty Co. v. Martinez,* 384 Ill. App. 3d 494, 498 (2008).

The trial court conducted a hearing on the parties' motions for summary judgment. As the majority point out, FMB relied upon logs generated by the project manager, AMEC Construction Management, which were daily reports of activity on the project. The majority assert that CSI's absence from the project manager's logs on the days it purportedly performed work validating its lien creates an inference that it did not work on those days and the consequential inference that the filing of its lien was untimely. The majority also assert that the affidavit of CSI's vice president merely creates a contrary inference.

FMB had provided a copy of the logs along with its motion for summary judgment. The trial court conducted a hearing on this issue on October 12, 2006. The court said: "So we have two bare assertions. Here's what we are going to do. We are going to take the time to get this right. I will allow you [both] to supplement... The issue is, as far as I'm concerned, the extent of proof or lack of proof that they [CSI] were on the job either supplying materials and/or performing services."

In response to this order, CSI provided an affidavit of its vice president, Perry Haberer, which explained that Haberer went to Chicago from Minnesota with several CSI employees and they worked on the project for several days, completing the work on June 18, 2003. As part of this affidavit Haberer provided details as to the hotel in which he and his employees stayed, the work they performed, and the materials they used. FMB responded to the order by relying on the same logs from AMEC which the court had previously characterized as "bare assertions." At oral argument in this case, FMB's counsel said that they had no further evidence to present on the issue of CSI's last day of work and, should this court reverse the finding of summary judgment on this issue, on remand FMB would again rely upon the AMEC logs. He did express the belief that testing Haberer through cross-examination might reveal evidence in FMB's favor. This is plainly insufficient to avoid entry of summary judgment in favor of CSI.

In *Cordeck I,* this court confronted similar issues regarding the sufficiency of affidavits filed in support of, or in opposition to, motions for summary judgment. As we explained in *Cordeck I,* Supreme Court Rule 191(a) requires that affidavits "be made on the personal knowledge of the affiant[ ]" and "set forth with particularity the facts upon which the claim, counterclaim, or defense is based." 210 Ill. 2d R. 191(a). "Accordingly, affidavits that are conclusory and fail to state facts with particularity do not strictly comply with Rule 191(a) and

may be stricken." *Cordeck I*, 383 Ill. App. 3d at 382, citing *Robidoux v. Oliphant*, 201 Ill. 2d 324, 336 (2002).

I do not believe that AMEC's logs may be properly considered as affidavits as they are completely lacking in showing personal knowledge and set forth no facts with particularity. Because FMB failed to contradict Haberer's affidavit with a counteraffidavit, or other admissible evidence, Haberer's statement concerning CSI's completion date must be taken as true. *Cordeck I*, 382 Ill. App. 3d at 384, citing *Financial Freedom v. Kirgis*, 377 Ill. App. 3d 107, 134 (2007).

Further, "[o]ne of the primary purposes of [section 7 of the Act's] four-month requirement is that third parties be enabled to learn from the claim whether it is enforceable." (Emphasis omitted.) *Merchants Environmental Industries, Inc. v. SLT Realty Ltd. Partnership*, 314 Ill. App. 3d 848, 869 (2000). Here, FMB was well aware of the lien claim from CSI as FMB was intimately involved in the construction of the project.

Finally, I do not agree with the majority that the trial court abused its discretion in not ordering CSI to produce its settlement agreement with Cordeck. It was uncontested that 26 of the 27 items for which CSI sought compensation as "extras" related to work performed by Cordeck. I agree with the majority that the trial court should have ordered the production of the settlement agreement. However, I do not believe this rose to an abuse of discretion.