2022 IL App (3d) 190509

Opinion filed September 6, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| CZ DRIVING HORSES, INC., | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff and Counterdefendant | ) | Will County, Illinois. |
| -Appellee, | ) | |
| | ) | |
| v. | ) | Appeal No. 3-19-0509 |
| | ) | Circuit No. 17-LM-2126 |
| HORSE POWERED EQUESTRIAN, INC., an | ) | |
| Illinois Limited Liability Company, and TARA- | ) | |
| LYNN POTEMPA SLADEK, an Individual, | ) | The Honorable |
| | ) | John C. Anderson, |
| Defendants, Counterplaintiffs, and | ) | Judge, Presiding. |
| Third-Party Plaintiffs-Appellants | ) | |
| | ) | |
| (Casey Zubek, Third-Party Defendant-Appellee).) | | |

_____

JUSTICE McDADE delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice Holdridge concurred in the judgment and opinion.

_____

**OPINION**

¶ 1    The plaintiff, CZ Driving Horses, Inc. (CZ), filed a civil complaint against the

defendants, Horse Powered Equestrian, LLC (HPE), and Tara-Lynn Potempa Sladek, after

Sladek recorded a stable keeper's lien on a horse owned by CZ for certain unpaid sums related to

the horse's boarding and care. The defendants filed several counterclaims against CZ and its

owner, Casey Zubek. CZ filed a motion for summary judgment on all claims, which the circuit

court granted in part and denied in part. After CZ voluntarily dismissed the two claims on which the court denied summary judgment, the defendants appealed. On appeal, the defendants argue that the circuit court erred when it granted summary judgment in favor of CZ on counts I, IV, V, and VI of CZ's complaint and counts I and V of the defendants' countercomplaint. We affirm in part, reverse in part, and vacate in part.

¶ 2                                    I. BACKGROUND

¶ 3        CZ, a business owned by Zubek that breeds and trains horses, owned two horses named M-C Fire-N-Ice and Ringstar. In 2016, CZ entered into two consignment contracts with HPE, a business owned by Sladek that boards and trains horses, to sell M-C Fire-N-Ice and Ringstar. Pursuant to these consignment contracts, *inter alia*, Zubek was responsible for veterinary and farrier bills for each horse.

¶ 4        The business relationship between Zubek and Sladek soured over the next year, culminating in Sladek recording a lien in July 2017 against M-C Fire-N-Ice for "training, boarding and stabling, medical services and relevant legal fees," totaling $5291.80, that she alleged Zubek refused to pay. The lien was recorded pursuant to section 49 of the Innkeepers Lien Act (770 ILCS 40/49 (West 2016)).

¶ 5        The record indicates that on August 1, 2017, CZ's attorney sent a letter to HPE's attorney stating that section 49 of the Innkeepers Lien Act prohibited charges unrelated to the care of the horse that was the subject of the lien. The letter stated that Zubek wanted to see invoices for charges related only to M-C Fire-N-Ice and, once he had that information, he would tender an offer to settle the dispute. On August 22, 2017, CZ's attorney sent an e-mail to HPE's attorney stating that "Mr. Zubek called me today and would like to pay the money listed in the lien in exchange for picking up his horse. Please advise at your earliest convenience."

2

¶ 6          The record further indicates that on August 22, 2017, Zubek withdrew $6500 from a business checking account and went to HPE accompanied by a Will County Sheriff's Department deputy to pay off the lien. Sladek refused to accept any payment and told him that any such payment would have to be made through their attorneys.

¶ 7          CZ filed this action on August 28, 2017. Its amended complaint, filed on November 1, 2017, contained six counts. Count I sought declaratory relief against HPE based on a claim that the lien was invalid as violative of section 49 of the Innkeepers Lien Act because the lien included charges not associated with M-C Fire-N-Ice's care. Count II alleged that Sladek sought to obtain M-C Fire-N-Ice fraudulently by orally agreeing to purchase the horse but never intending to pay the agreed-upon amount. Rather, the complaint continued, the owner of HPE sought to obtain M-C Fire-N-Ice by recording an invalid lien against the horse. Count III alleged that Sladek and HPE also violated the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2016)) and the Uniform Deceptive Trade Practices Act (815 ILCS 510/1 *et seq.* (West 2016)). Count IV alleged conversion against Sladek. Count V alleged slander of title against Sladek via the recording of an invalid lien. Count VI alleged that Sladek breached the oral contract to purchase M-C Fire-N-Ice.

¶ 8          On October 9, 2018, HPE and Sladek filed their amended counterclaims and third-party complaint. Count I alleged a breach of the consignment contract in that CZ failed to pay veterinary and farrier bills. Count II alleged, in the alternative, that it was entitled to damages for those veterinary and farrier bills on a promissory estoppel theory. Count III alleged, in the alternative, that CZ had been unjustly enriched because it had not paid for the boarding and care of M-C Fire-N-Ice. Count IV sought a permanent injunction against CZ for tortious interference

3

with a business contract.[1] Count V sought enforcement of the lien on M-C Fire-N-Ice via sale of the horse.

¶ 9    In CZ's answer, it included an affirmative defense of tender, based on Zubek's attempt to pay off the lien on August 22, 2017, when he went to HPE with $6500 in cash. CZ alleged that Zubek's tender discharged the lien.

¶ 10    In January 2019, Sladek was deposed. During her deposition, *inter alia*, she admitted that a total of $645.56 of the lien amount was attributable to care for M-C Fire-N-Ice.

¶ 11    In February 2019, CZ filed a motion for summary judgment on counts I to V, in part because discovery allegedly revealed that Sladek grossly overstated the amount actually due to HPE for M-C Fire-N-Ice when she recorded the lien and that she refused to accept payment for the lien from Zubek. CZ also moved for summary judgment on the defendants' amended counterclaims.

¶ 12    The defendants' response alleged that CZ misconstrued what could be included in a lien recorded pursuant to the Innkeepers Lien Act, that a genuine issue of material fact existed on whether the charges pertaining to M-C Fire-N-Ice were unreasonable, that a genuine issue of material fact existed in the circumstances of Zubek's attempt to pay the lien off to Sladek, and that the defendants could not have breached a contract by asserting a statutory right to file a lien on which the consignment contract was silent.

¶ 13    The circuit court heard arguments on the motion for summary judgment in April 2019 and issued a written decision later that month granting CZ's motion in part. Specifically, the court granted summary judgment in favor of CZ on counts I, IV, V, and VI of CZ's complaint, as

_____

[1]Count IV was later dismissed with prejudice by agreement of the parties.

well as on the defendants' amended counterclaims, albeit without explanation. Regarding count I, the court found that the $5291 lien was invalid in its entirety and then noted that "[e]ven though there was a smaller lien amount that might have been claimed, the assertion of a $5,291 lien renders the smaller amount unavailable." The court ordered Sladek to peacefully surrender possession of M-C Fire-N-Ice to Zubek within two days of the order.

¶ 14    The court granted summary judgment on counts IV, V, and VI without further comment. The court awarded $5000 in monetary damages on count IV only, noting that CZ's request for compensatory damages was excessive, and found that punitive damages were not appropriate. No attorney fees were awarded because "this case has been over-litigated by both parties."

¶ 15    The circuit court denied the motion for summary judgment as to counts II and III of the complaint, ruling that CZ had not established an intent by Sladek to commit fraud. The court further noted it was skeptical that CZ could ever prevail on those two counts.

¶ 16    CZ later voluntarily dismissed counts II and III.

¶ 17    After its motion to reconsider was denied, the defendants appealed.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, the defendants argue that the circuit court erred when it granted summary judgment in favor of CZ on counts I, IV, V, and VI of the complaint. We will address the defendants' arguments on each count in turn.

¶ 20    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). We review a circuit court's decision on a motion for summary judgment *de novo*. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 21     Regarding the declaratory judgment claim in count I, the defendants argue that the circuit court erred when it found that the lien was invalid. We agree.

¶ 22     Section 49(b) of the Innkeepers Lien Act provides:

> "Stable keepers shall have a lien upon the horses, carriages, harness, tack and equipment, and any other personal property stored by the owner at the stable or boarding facility in the amount of the proper charges due for the keeping thereof and expenses bestowed thereon at the request of the owner, or the person having the possession thereof, plus other charges, present or future, in relation to the horse boarded, plus all fees and expenses, including legal fees, incurred by the keeper to enforce the lien, whether by public or private sale, to the extent permitted under this Section." 770 ILCS 40/49(b) (West 2016).

¶ 23     "The cardinal rule in construing a statute is to ascertain and give effect to the legislative intent." *In re Jarquan B.*, 2017 IL 121483, ¶ 22. Legislative intent is best determined by examining the plain language of the statute. *Id.* Additionally, "statutes must be read as a whole and not as isolated provisions." *Id.*

> "Therefore, we must construe words and phrases in light of the other relevant portions of the statute so that, if possible, no term is rendered superfluous or meaningless. [Citation.] If the language of a statute is clear and unambiguous, we will give effect to the statute's plain meaning without resort to other aids of statutory construction. [Citation.]" *Id.*

6

¶ 24    Subsection (b) consists of a single long, somewhat convoluted sentence and is not itself a model of clarity. Nonetheless, we believe the legislature's intent is clear and it controls our decision.

¶ 25    We find, contrary to the defendants' claim, that section 49(b) does not authorize the inclusion of charges related to one horse to be included in a lien recorded on another horse. The statute clearly refers to charges "in relation to the horse boarded" (770 ILCS 40/49(b) (West 2016)), which constitutes a limitation applicable to the entire sentence. If that were not the case, then the lien would only apply to present and future charges incurred for the "horse boarded." It would be unreasonable to construe the statute as intending past charges for a second horse (or different personal property) to be included on a lien for a horse for which those charges do not apply let allow present and future charges to be included *only* on the specific horse to which those charges apply.

¶ 26    Additionally, reading section 49(b) in light of the entirety of section 49, as we are required to do (see *Jarquan B.*, 2017 IL 121483, ¶ 22), we note that the legislature appears to consistently indicate that unpaid charges result in a lien only upon the horse to which those charges arose. See, *e.g.*, 770 ILCS 40/49(c) (West 2016) (stating that "[e]vidence of a possessory lien that constitutes notice to law enforcement authorities includes, but is not limited to, a written boarding agreement signed by the horse owner acknowledging that *the keeper shall have an automatic lien on the horse for the amount owed or the unpaid invoices for the keeping of the horse* and fees and expenses, including attorney's fees, incurred in connection with the enforcement of the lien" (emphasis added)); *id.* § 49(f) (stating that "[a]fter the amount due for keeping the horse and any unpaid invoices and any and all fees and costs incurred in connection

7

with the enforcement of the lien, including, but not limited to, the auctioneer and sheriff's fees, advertising costs, and any legal fees and costs are paid, the balance shall be paid to the owner").

¶ 27 Moreover, construing section 49(b) as permitting the inclusion of charges from one horse in a lien for an entirely separate horse would have the potential effect of allowing the forced sale of a horse for which there are no outstanding charges. That outcome is untenable and cannot be what the legislature intended.

¶ 28 For the foregoing reasons, we hold that the language of section 49(b), properly construed, did not permit the defendants to include any charges related to Ringstar or any other horse in a lien filed against M-C Fire-N-Ice. However, this is not fatal to the defendants' claim of error.

¶ 29 The materials pertinent to the summary judgment motion show that while Sladek did include unauthorized charges in the lien recorded on M-C Fire-N-Ice, there were charges related to that horse that had been unpaid. Sladek's deposition testimony indicated that a total of $645.56 of the lien amount was for charges attributable to M-C Fire-N-Ice's care. CZ even admitted the existence of that unpaid amount in the circuit court and in its brief on appeal. Under section 49(b), Sladek had a right to a lien on M-C Fire-N-Ice for those unpaid charges. *Id.* § 49(b).

¶ 30 We note that "[a] finding of constructive fraud as a result of a lien claimant's intentional overstatement of the amount due invalidates the entire lien, not merely the claim for the overcharge." *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 394 Ill. App. 3d 870, 880 (2009). Proving constructive fraud in this regard requires more than just proof that the claim has been overstated; it requires "additional evidence from which intent to deceive can be inferred." *Id.* at 879. Our review of the record in this case, coupled with the statutory imprecision, reveals no evidence from which an intent by Sladek to deceive can be established as a matter of law;

therefore, there is no basis to invalidate the entirety of the lien recorded against M-C Fire-N-Ice based on the overcharge.

¶ 31    Moreover, contrary to CZ's argument, Zubek's attempted tender of payment on August 22, 2017, which Sladek rejected, did not invalidate the lien.

> " 'Tender' is an unconditional offer of payment consisting of the actual production of a sum not less than the amount due on a particular obligation. [Citation.] A tender must be without conditions to which the creditor can have a valid objection or which will be prejudicial to his rights." *Brown & Kerr, Inc. v. American Stores Properties, Inc.*, 306 Ill. App. 3d 1023, 1032 (1999).

The rejection of such a tender discharges the lien, but it does not extinguish the debt. See 28 Williston on Contracts § 72:46 (4th ed. 2000); 51 Am. Jur. 2d *Liens* § 66 (2018). The rejection of Zubek's tender in this case did not mean that the lien was invalid at any time prior to that rejection.

¶ 32    The defendants also argue that the alleged $1250 in legal fees it incurred as a result of the lien was properly included in the lien amount. We decline to address the merits of this argument. Whether CZ was entitled to summary judgment on its declaratory judgment claim does not depend in any way upon whether the alleged $1250 in attorney fees was properly included in the amount of the lien.

¶ 33    For the foregoing reasons, we hold that the circuit court erred when it granted summary judgment in favor of CZ on count I of its complaint.

¶ 34	Regarding the conversion claim in count IV, the defendants argue that because a valid lien had been recorded, CZ failed to show that it had a right to immediate possession of M-C Fire-N-Ice.

¶ 35	Initially, we note that part of the defendants' argument on this issue is that a genuine issue of material fact existed regarding whether CZ owned M-C Fire-N-Ice. We find this argument to be disingenuous. HPE listed both CZ and Zubek as the owners of M-C Fire-N-Ice in the consignment contract. Further, in essence, Zubek *is* CZ. We refuse to elevate form over substance in the manner that the defendants request.

¶ 36	As previously stated, the lien was valid despite the overcharge, but it was discharged upon the rejection of Zubek's tender. *Supra* ¶¶ 25, 27. Further, while the debt remained in this case after the tender was rejected, CZ had the right to repossession of M-C Fire-N-Ice. See *Martindell v. Lake Shore National Bank*, 15 Ill. App. 2d 217, 227 (1957), *rev'd on other grounds*, 15 Ill. 2d 272 (1958); see, *e.g.*, *Bell Leasing Brokerage, LLC v. Roger Auto Service, Inc.*, 372 Ill. App. 3d 461, 473 (2007) (holding that "[w]ithholding chattel until a plaintiff pays storage fees constitutes a conversion where the defendant does not have a valid possessory lien"). Thus, a conversion occurred when Sladek refused to return M-C Fire-N-Ice to Zubek. See *Glaser v. Kazak*, 173 Ill. App. 3d 108, 115 (1988) (holding that "[a] party claiming conversion must show (1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the personalty of another; (2) his right in the property; (3) his right to the immediate possession of the property, absolute and unconditional; and (4) a demand for possession thereof"). Accordingly, the circuit court did not err when it granted summary judgment in favor of CZ on count IV of its complaint.

¶ 37    Regarding the slander of title claim in count V, the defendants argue that such claims cannot apply to personal property and that, even if they could, a genuine issue of material fact existed as to whether Sladek possessed the requisite malice when she recorded the lien.

¶ 38    " 'Slander of title' is the false and malicious publication, oral or written, of words which disparage an individual's title to property resulting in special damages." *McDonald's Corp. v. American Motorists Insurance Co.*, 321 Ill. App. 3d 972, 988 (2001). A key component of slander-of-title actions is that a false misrepresentation was made. *Id.* Here, as we have previously stated, Sladek had a right to record a lien on M-C Fire-N-Ice. *Supra* ¶ 25. Thus, even if slander-of-title claims can apply to personalty, there is nothing in the record to indicate that Sladek made any false misrepresentation regarding Zubek's title to M-C Fire-N-Ice. Accordingly, the circuit court erred when it granted summary judgment in favor of CZ on count V of its complaint.

¶ 39    Regarding the breach-of-contract claim in count VI, the defendants argue that CZ never requested summary judgment on that count and that, even if it did, the undisputed facts showed that the parties attempted to renegotiate the terms of the agreement such that it was proper to find that no mutual agreement ever existed.

¶ 40    Our review of the record reveals that CZ, in fact, did not move for summary judgment on count VI. Section 2-1005 of the Code of Civil Procedure clearly requires a party to move for summary judgment to be entitled to it. 735 ILCS 5/2-1005(a), (b) (West 2016). It does not permit a circuit court to grant summary judgment *sua sponte*. *Peterson v. Randhava*, 313 Ill. App. 3d 1, 10 (2000). Accordingly, we vacate the circuit court's grant of summary judgment in favor of CZ on count VI of its complaint.

11

¶ 41   The defendants' second argument on appeal is that the circuit court erred when it entered summary judgment in favor of CZ on the defendants' countercomplaint. We note that the only two counts at issue on appeal are counts I (breach of the consignment contract) and V (enforcement of the lien and petition for sale of M-C Fire-N-Ice).

> "A defendant who moves for summary judgment may meet its initial burden of production in at least two ways: (1) by affirmatively disproving the plaintiff's case by introducing evidence that, if uncontroverted, would entitle the movant to judgment as a matter of law (traditional test) [citation], or (2) by establishing that the nonmovant lacks sufficient evidence to prove an essential element of the cause of action (*Celotex* test) (see *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805 *** (1998), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 *** (1986); [citation])." *Williams v. Covenant Medical Center*, 316 Ill. App. 3d 682, 688-89 (2000).

Under either path, if the defendant-movant meets its burden of production, the burden of production then shifts to the plaintiff-nonmovant. *Hutchcraft v. Independent Mechanical Industries, Inc.*, 312 Ill. App. 3d 351, 355 (2000). The plaintiff-nonmovant is not required to prove its case at this stage, but it must present some evidence that potentially would entitle it to judgment in its favor. *Kleiss v. Bozdech*, 349 Ill. App. 3d 336, 350 (2004).

¶ 42   To establish a breach of contract, an individual must show that (1) a valid and enforceable contract existed, (2) performance by the party claiming the breach, (3) a breach by the other party, and (4) injury resulting to the party claiming the breach. *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2016 IL App (1st) 142754, ¶ 85.

12

¶ 43    The resolution of the defendants' argument on count I of its countercomplaint necessarily involves our previous ruling on the impact of Zubek's tender of payment to Sladek. As we stated above, the legal effect of Zubek's tender and Sladek's rejection thereof was to discharge the lien, but not the debt. *Supra* ¶ 31. CZ admitted that there were unpaid charges of $645.56 related to M-C Fire-N-Ice's care. The failure to pay those charges constituted a breach of the consignment contract, which required CZ and Zubek to pay for M-C Fire-N-Ice's veterinary and farrier bills.

¶ 44    Further, contrary to CZ's assertions, there is nothing in the record to indicate that the defendants failed to perform its end of the consignment contract. While CZ claims that HPE and Sladek did not take steps to try to sell M-C Fire-N-Ice, such as taking out listings and advertisements or engaging in communications with potential buyers, CZ can point to nothing in the consignment contract that specifically required HPE and Sladek to undertake those types of actions. Accordingly, we hold that the circuit court erred when it granted summary judgment in favor of CZ on count I of the defendants' countercomplaint.

¶ 45    The resolution of the defendants' argument on count V of their countercomplaint also involves our ruling on Zubek's tender. Because the legal effect of the rejection of Zubek's tender was to discharge the lien, it was no longer able to be enforced. Accordingly, we hold that the circuit court did not err when it granted summary judgment in favor of CZ on count V of HPE's countercomplaint.

¶ 46    In sum, we (1) reverse the circuit court's grant of summary judgment in favor of CZ on counts I and V of CZ's complaint and count I of the defendants' countercomplaint, (2) vacate the court's grant of summary judgment in favor of CZ on count VI of CZ's complaint; (3) affirm the court's grant of summary judgment in favor of CZ on count IV of CZ's complaint and count V of

13

the defendants' countercomplaint; and (4) affirm the court's judgment on counts II and III of the defendants' countercomplaint, which the defendants did not appeal.

¶ 47　　　For the foregoing reasons, the judgment of the circuit court of Will County is affirmed in part, reversed in part, and vacated in part.

¶ 48　　　　　　　　　　　III. CONCLUSION

¶ 49　　　The judgment of the circuit court of Will County is affirmed in part, reversed in part, and vacated in part.

¶ 50　　　Affirmed in part, reversed in part, and vacated in part.

*CZ Driving Horses, Inc. v. Horse Powered Equestrian LLC*, 2022 IL App (3d) 190509

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 17-LM-2126; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Kimberly A. Jansen and Yvonne C. Ocrant, of Hinshaw & Culbertson LLP, of Chicago, for appellants. |
| **Attorneys for Appellee:** | James Sethna and Brian Gipson, of Ashen Law Group, of Chicago, for appellees. |